CONKLIN, Appellant, vs. NEW YORK LIFE INSURANCE COMPANY, Respondent.

*October 10—November 5, 1929.*

M. E. *Davis* of Green Bay, for the appellant.

For the respondent there was a brief by *Ryan, Cary & Ryan* of Appleton, attorneys, and *Louis H. Cooke* of· New York city, of counsel, and oral argument by *Paul V. Cary* and *Patricia Ryan.*

ROSENBERRY, C. J.    The insured was a farmer and cheese-maker.   He died June 29, 1928, at the age of forty-two years. He was taken sick with influenza the latter part of April, 1928.   In August, 1927, the deceased was solicited for in-surance, and on August 6, 1927, signed an application for a $2,000 policy.   He was examined on August 10, 1927, by J. W. McLaughlin, medical examiner for the defendant, at the cheese factory operated by the deceased.   The exam-iner took a specimen of urine, found traces ·of sugar, and the examiner then· notified the agent.   The agent secured another specimen, took it to another doctor, who reported that there was no sign of sugar.   The examiner then sub-mitted his report. in which he stated no sugar was found.   In the examination of the urine of the deceased, the specific gravity of the urine was reported as 1018, the systolic blood pressure was 128, diastolic 92.   This information was given to the chief· examiner and subsequently a policy for $2,000 was duly issued, and thereafter a policy for $3,000 was is-sued on the same application, upon which latter policy suit is brought.   It is the contention of the plaintiff that the specific gravity of the urine taken together with the diastolic and systolic blood pressure indicated kidney trouble and cause

for further investigation. The principal contention of the plaintiff is that the false answers made to the questions by the applicant were not intended to deceive and that the court was in error in changing the verdict.

Sec. 209.06 (1), Stats. 1927, provides:

"No oral or written statement, representation, or warranty made by the insured or in his behalf in the negotiation of a contract of insurance shall be deemed material or defeat or avoid the policy, or prevent its attaching unless such statement, representation, or warranty was false and made with actual intent to deceive or unless the matter misrepresented or made a warranty, increased the risk or contributed to the loss."

The facts relative to the prior illness of the deceased are as follows: in February, 1924, the deceased lived in Seymour. He consulted Dr. V. J. Hittner there on February 1, 1924, who advised him that he was suffering from diabetes. Doctor Hittner treated him and sent him to the Bellin hospital at Green Bay for a course of insulin treatment. Dr. Hittner treated him for two weeks and he was in the hospital eleven days. The hospital records show that he was admitted February 15, 1924, and blood analysis showed sugar .42 per cent., about four times the normal amount. In November, 1924, the deceased consulted Dr. W. L. Boydon. At that time the deceased complained of loss of weight, tired, suffered frequent urination, getting up nights, and was in a general run-down condition. Dr. Boydon's diagnosis was that the deceased was suffering from diabetes; he placed him upon a restricted diet and advised him to take insulin. The treatment resulted in the improvement of the patient. The deceased consulted Dr. Boydon a second time. Upon the second examination there was less sugar present than at the first. He was given more insulin treatments. Dr. Hittner treated the deceased for diabetes between October 30th and November 27, 1925.

In disposing of the motions after verdict the court said:

"I am of the opinion that Louis Conklin, the applicant, falsely made the statements set forth, and that he made them with intent to deceive the insurance company, and that had the company known the full facts and truth of applicant's condition, that it might have refused to issue the policy to the applicant.

"Plaintiff's contention that the facts set forth in the application and medical examiner's report were sufficient to have put them upon inquiry, in a large measure may be true, but if the applicant had truthfully answered all questions, the information thus given, together with truthful answers, might have prevented the issuance of the policy.

"It may be true that the insurance company ought to have been more diligent, from the facts set forth in the examination and report, but I believe it is also true that the applicant, by his false answers, deceived the company, and that his beneficiary now ought not to be allowed to profit by such deception."

It is considered that the trial court arrived at a correct conclusion in this matter. It seems incredible that an intelligent man such as the deceased undoubtedly was, who had been treated for diabetes over a period of more than a year with eleven days in a hospital, could forget such weighty and material matters even if, as the plaintiff claims, the examination was made in the factory at a time when he was busily engaged in others matters and under somewhat distracting conditions. Such being the case, the false answers could have been made for no other possible purpose than to induce reliance upon them and thereby deceive the defendant company. The judgment of the trial court was therefore correct.

*By the Court.*—Judgment affirmed.