PENN MUTUAL LIFE INSURANCE COMPANY OF PHILADELPHIA, Plaintiff, *v.* RICHY CRAIG, JR., Defendant.

Supreme Court, New York County, February 18, 1930.

*Winthrop, Stimson, Putnam & Roberts* [*William C. Chanler*, of counsel], for the plaintiff.

*Louis P. Randell* [*Frederick E. Goldsmith* of counsel], for the defendant.

LYDON, J. This is an action for rescission and cancellation of two policies of life insurance, each in the principal sum of $7,500, issued by plaintiff on the life of the defendant. Beside the life provision each of the policies provides for the payment by plaintiff to the defendant of an amount of $75 per month during total and permanent disability of the insured. The two policies in suit were issued by the plaintiff on or about June 19, 1928, in pursuance of an application by and a medical examination of the insured, which are, by their own terms and by the terms of the policies, made a part of the policies. This action is based (1) on false and fraudulent statements amounting to warranties made by the insured in securing the issuance of the policies by plaintiff, and (2) on material misrepresentations in inducing plaintiff to issue the policies.

The application by the insured and the report of his medical examination contain, among others, the following answers by the insured to questions propounded by the plaintiff's physician: " 11-B-Q. When were you last attended by a physician or consulted one? A. During childhood. 11-C-Q. For what disease? A. Some ordinary disease of which I have no recollection. 11-D-Q. Give details in full. 11-E-Q. Give name and residence of the physician who attended you? A. I do not recall. 11-H-Q. Has any physician ever advised you to try a change of climate? A. No. 15-B-Q. Have you had asthma, consumption, spitting of blood, habitual cough and expectoration, palpitation or any disease of the throat, heart or lungs? A. No." By the terms of the application for the issuance of the policies in suit, the answers to the above questions were " declared to be full, complete and true and offered to the company as consideration for the contract." The falsity of the answers to the questions herein set forth was established by the testimony of Dr. Newman and by the admissions of defendant contained in the proof submitted by him in May and June, 1929, in an attempt to establish a claim for total and permanent disability under the policies.

Dr. Newman testified that he had attended defendant in his professional capacity three or four times during the months of October and November, 1926, and that the defendant was not well at the time. The nature of defendant's illness at the time is set forth in a letter submitted by defendant to plaintiff as part of his proof in attempting to establish a claim of disability under the policies. This letter, plaintiff's Exhibit 1, was written by Dr. Newman to plaintiff at the direction of defendant, plaintiff's Exhibit 2. The statements contained in plaintiff's Exhibit 1, having been submitted as proof of disability, are admissions binding on defendant. Plaintiff's Exhibit 1 shows that during October, 1926, defendant was suffering from "fatigue, loss of weight and cough," and an examination by Dr. Newman made him suspicious of the presence of tuberculosis, although two sputum examinations and an X-ray were negative for tuberculosis. This letter also establishes that Dr. Newman told the defendant that he was suspicious of tuberculosis, and it further appears that he advised the defendant to leave town for a rest. One of the symptoms which Dr. Newman's examination revealed was the presence of moist, coarse rales. Dr. Newman, on redirect examination testified that moist coarse rales are " sounds that you hear on listening to the chest " and that they are an indication of mucous in the lungs, which is the result of reaction of the lungs to foreign substance.

Dr, Newman further testified that following his advice the defendant left town for a rest, going to Towaco, N. J., the doctor prescribing a diet, plenty of rest, air and sunshine. Thus, from the undisputed testimony of Dr. Newman and the defendant's own admissions, the answers to questions 11-b, 11-c, 11-d, 11-e, 11-h and 15-b of the application, were false. The defendant was in court and offered no evidence to explain the representations he made, nor the reason for the consultations with Dr. Newman. The answers given by defendant to the questions under consideration are so untruthful and so far removed from the true facts as to lead me to the conclusion that the defendant deliberately misrepresented the true facts so as to deceive the plaintiff. In answer to question 11-b, as to when he was last attended by a physician, he stated, " During childhood," when in fact he had been treated by Dr. Newman three or four times during October and November, 1926. Since this answer was given in the application in June, 1928, it is hard to believe that the defendant had forgotten about these treatments in October and November, 1926, but that he could, on the other hand, remember that he was treated " during childhood " and then, in answer to the next question, 11-c, for what disease, the defendant should have stated " some ordinary disease

of which I have no recollection," when in truth and in fact he had been advised by his physician in October and November, 1926, to leave New York city for a rest, as the said physician was suspicious that the defendant was suffering from tuberculosis and so advised him.

Under the fraud cause of action it cannot be said that the intent to deceive did not exist at the date of the signing of the application. The defendant knew Dr. Newman and remembered him as his family physician and so stated in the application. He further well knew that his physician was suspicious of the possibility of tuberculosis and so advised him. A diet of good nourishing food, plenty of rest, air and sunshine was prescribed. It appears that the defendant in fact did leave town for a rest, going to Towaco, N. J., to the home of the mother of Dr. Newman's nurse. The number of false answers contained in the defendant's application and the extent to which they depart from the undisputed and unexplained facts compel the inference that the insured intended to deceive the plaintiff. The defendant in support of his contentions relies upon the case of *Nowak* v. *Brotherhood of American Yeoman* (249 N. Y. 78), but in that case the alleged falsity was explained, and the Court of Appeals was satisfied that the insured answered the questions in the way she understood them. In the instant case it cannot be said that the defendant misunderstood the questions and answered them as he understood them, for the simple reason that they are absolutely so false as to carry with them the inference that the defendant deliberately misrepresented the true facts in order to deceive the plaintiff, and this is further confirmed by the fact that during the trial the defendant was in court and did not take the stand and offered no evidence to explain the misrepresentations.

Under the second cause of action in plaintiff's amended complaint I am of the opinion that the plaintiff has also established a cause of action. (*Travelers Ins. Co.* v. *Pomerantz*, 246 N. Y. 63.) The falsity of the insured's answer is not disputed, and, while the defendant was in court, he neither denied nor explained his untrue application. It cannot be said that these answers were immaterial because the insurer has the right to an opportunity to know whether the treatment by a physician was for an ailment inconsiderable or serious. Any misrepresentation which defeats or seriously interferes with the exercise of such a right cannot truly be said to be an immaterial one. The evidence in this case is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other side to have contradicted. Plaintiff produced evidence to show that the facts concerning which defend-

ant made his misrepresentations were such that, if known, they might have deterred it from accepting him as a risk.   Let us assume that the applicant had answered all the questions truthfully and admitted that he received medical attention three or four times during October and November, 1926, that he was suffering from loss of weight, had a cough, and his physician told him he was suspicious the applicant had tuberculosis and advised him to seek a change of climate and take a rest, almost certainly his application would have been rejected.   It is true that Dr. Newman testified that several months later the defendant came in to see him; that he was looking and feeling much better, had gained weight and lost his cough, and that all traces of his illness had disappeared.   These circumstances, in my opinion, did not give the applicant the right to withhold true answers to the questions under consideration.   In fact, this testimony further convinces me that the applicant deliberately misrepresented the facts and concealed the truth in order to deceive the plaintiff insurance company.   It necessarily follows from the foregoing that I must find in favor of the plaintiff.

Judgment for plaintiff.   Submit findings on notice.