### NEW YORK LIFE INS. CO. v. DROOKER et al.

### SAME v. SIMONS et al.

Nos. 3282, 3295.

District Court, D. Massachusetts.

Nov. 18, 1931.

In No. 3282:

Richard Wait and Choate Hall & Stewart, all of Boston, Mass., for plaintiff.

Wendell P. Murray, of Boston, Mass., for defendants Moses, Abraham, and Sadie Drooker.

Wendell P. Murray, of Boston, Mass., for defendants Isaac E. Simons and United States Trust Co., executors.

In No. 3295:

F. H. Nash and Richard Wait, both of Boston, Mass., for plaintiff.

Wendell P. Murray and Edmund M. Murray, both of Boston, Mass., for defendant.

BREWSTER, District Judge.

These two cases were tried together. In each the complainant seeks to avoid policies of life insurance issued on the life of Barnet Drooker. In No. 3282 the policies involved were made payable to the children of the insured, who are named as respondents. In No. 3295 they were payable to his estate, and the executors are respondents. In both suits complainant alleges false representations by Drooker in his applications for the insurance, and in No. 3282 an additional ground for defeating the policy is alleged. However, the cases can conveniently be considered in one opinion.

### Findings of Fact in No. 3282.

On July 18, 1928, Drooker subscribed to written applications for two policies of life insurance in complainant's company for $5,000 each. So far as is material, the applications were identical in terms. In them he declared that the answers to questions appearing in the applications were written as made by him, that they were full, complete, and true, and he agreed that the complainant, believing them to be true, should rely and act upon them. In his applications he disclosed no infirmities, no illness, no injury, no hospital treatment, and no consultation with physicians. To the question, "Has albumin or sugar been found in your urine?" he replied, "No." He gave the same answer to the question, "Have you consulted a physician for or suffered from any ailment or disease of * * * the Stomach or Intestines, Liver, Kidneys or Bladder?"

The applications also contained the following provision:

"It is mutually agreed as follows: 1. That the insurance hereby applied for shall not take effect unless and until the policy is delivered to and received by the applicant and the first premium thereon paid in full during his lifetime, and then only if the applicant has not consulted or been treated by any physician since his medical examination; * * * *"

At the time of the signing of these applications, Drooker submitted to an examination before the plaintiff's medical examiner who reported to the company that chemical examination of the applicant's urine showed no sugar. The complainant, relying upon the representations contained in the applications and upon the medical examination, issued under date of August 22, 1928, and October 15, 1928, two policies of life insurance in the sum of $5,000 each on the life of Drook-

er, and in each policy the respondents were named as beneficiaries. Each of these policies contained the following provisions:

"The Contract.—The Policy and the application therefor, * * * constitute the entire contract. All statements made by the Insured shall, in absence of fraud, be deemed representations and not warranties, and no statement shall avoid the Policy or be used in defense to a claim under it, unless it is contained in the written application and a copy of the application is indorsed upon or attached to this Policy when issued."

■■■ Drooker's representations, made in his applications, were not true.

He had, between September 16, 1926, and March 1, 1928, consulted his family physician, Dr. Eugene E. Everett. It appears from Dr. Everett's testimony that Drooker called at his office on September 16, October 29, and November 14, 1926, and in January, May, and September, 1927, and again on March 1 and July 24, 1928. During one of the earlier visits (probably in September, 1926), Dr. Everett, upon an examination of Drooker's urine, discovered that it contained sugar. He prescribed a proper diet, which was followed, with a result that in about six months all traces of sugar had disappeared. These several visits from that time until 1928 were for the purpose of submitting specimens of urine for urinalysis. The last visit was on July 24, 1928, when the doctor pronounced his patient entirely cured and, so far as the evidence shows, no further traces of sugar were found up to the time of Drooker's death on May 1, 1930, when he died after a brief illness of pneumonia. It is significant that on May 1, 1930, an analysis of his urine revealed slight traces of albumin but no sugar. The policies were not delivered until subsequent to July 24, 1928, the day of the last visit which Drooker made to Dr. Everett. The doctor does not recall whether he told Drooker that he was suffering from diabetes, but he did inform him as to what he had discovered and is reasonably sure that he pointed out the significance of the presence of sugar in the urine. It is reasonable to suppose that Drooker was in possession of sufficient information to give rise at some time to an apprehension that his ailment might be properly diagnosed as diabetes.

Both in this case and in No. 3295 a good deal depends upon the question of fact whether Drooker's ailment was actually diabetes or whether it was only a temporary condition from which he had fully recovered. There was medical testimony offered by both complainant and respondents bearing upon this question. It is difficult to arrive at a satisfactory conclusion. Dr. Everett, when he was advising Drooker, felt that he had diabetes but at the trial was rather doubtful whether that diagnosis had been correct. The medical experts are in substantial agreement that if Drooker was a diabetic, evidence of that disease would have appeared during his last illness. They also agree that sugar does not in every case indicate diabetes. It may result from a number of different causes, such as accident, infection, or serious disease. On the other hand, there is no evidence that Drooker ever sustained an accident or that he had been afflicted with any infectious or otherwise serious diseases, and if he had diabetes the ailment would manifest itself by an excess of sugar in the urine. But we are told by experts that a chemical analysis of one's urine is not at all a conclusive test and alone would not be an adequate basis for a diagnosis of diabetes. The burden of proving that Drooker had had diabetes rests upon the complainant, and I do not think this burden is sustained in view of the medical testimony, the short duration of the ailment, the readiness with which Drooker responded to treatment, and the period of time that had subsequently elapsed without any manifestation of the disease.

■■■ I find, therefore, as a fact that in 1926 and 1927 examinations of the applicant's urine disclosed the presence of sugar in moderate quantities, but do not find that he had had diabetes. Can it be said as a matter of fact that these misrepresentations were made with intent to deceive, or were they material to the risk of loss? Massachusetts General Laws, c. 175, § 186.

On the question of intent it is, of course, impossible to say what was in Drooker's mind when he stated that he had not consulted a physician within five years, or had never had sugar in his urine. He must have known that these statements were not true. It is impossible to conceive that he did not recall these consultations or the purpose of them. The periodical urinalysis extending over a period of eighteen months, his restricted diet, and the discovery of his physician, could not possibly have faded from his memory in July, 1928. That he had his ailment in mind is shown by his visit to Dr. Everett a few days after his application for insurance. This act indicated that he was in doubt as to whether his urine was free from sugar and that he went to his physician for reassurance. I cannot escape the conclusion that he well

knew his replies to be false and that he failed to disclose the true facts with a deliberate intent to mislead the insurance company. The fact that he had applied for $10,000 of insurance while he was periodically going to his physician lends support to this conclusion. I think in this case the evidence sustains the complainant's burden of proving that the misrepresentations were made with an actual intent to deceive.

On the question of materiality of the matters concealed, so far as that question is one of fact, there was evidence that a true answer to the question whether an applicant had ever had sugar in his urine was regarded as material to the risk, both by this complainant and other insurance companies; but on all the evidence in this particular case I am satisfied the complaint for which Drooker had consulted his physician was not one that would tend to shorten his expectancy of life or weaken his power of resistance to disease, and I find that it in no way contributed to his death and that it did not increase the risk. The complainant duly tendered to the respondents the premiums which had been paid on the policies and duly notified them of its intention to treat the contracts as void.

### Findings of Fact in No. 3295.

The facts in this case are similar to those in No. 3282, except that there were two applications signed on the 4th day of February, 1930, originally for $5,000 each of ordinary life insurance in the complainant company, which were subsequently increased to $10,000 each, and two policies for $10,000 each were issued, payable to the estate of the insured. The applications for these policies contained the same declarations and agreements, the same questions and answers, as were referred to in the findings of fact in No. 3282. The applicant again submitted to an examination before a medical examiner, who reported that the chemical examination of the urine showed no sugar. My findings in case No. 3282, respecting Drooker's illness, do not need to be recited again but will be incorporated herein by reference, as also will my finding respecting the materiality of the matters misrepresented.

As to the actual intent to deceive, however, the situation in February, 1930, was quite different from that in July, 1928. Certain facts which are deemed sufficient to establish actual intent to deceive in No. 3282 are not present in No. 3295. Over one and one-half years had elapsed since his last consultation with his physician, and considerably over two years since any sugar had been found in his urine. If he then recalled these consultations, Drooker was entirely justified in believing that his recovery had been complete and in then entertaining an honest belief, which he could not have had in July, 1928, that his insurability would not be affected by the fact that sugar had, two years before, been found in his urine. The evidence in this case, in my opinion, falls short of sustaining complainant's burden of showing affirmatively an actual intent to deceive. In this case, therefore, I do not find as a fact that the misrepresentations were made with that intent. The complainant has duly tendered to these respondents the premiums paid on the policies and has advised them of its intention to treat the policies as void.

### Conclusions of Law.

■ Section 186 of chapter 175 of the Massachusetts General Laws is as follows:

"Section 186. No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk of loss."

I assume that the rights of the parties are to be determined with reference to this statute.

There can be no doubt under the Massachusetts decisions that misrepresentations will not defeat the policy unless (1) they are made with actual intent to deceive, or (2) the matters misrepresented increased the risk. Levie v. Metropolitan Life Ins. Co., 163 Mass. 117, 39 N. E. 792; Hogan v. Metropolitan Life Ins. Co., 164 Mass. 448, 41 N. E. 663; Rainger v. Boston Mutual Life Ass'n, 167 Mass. 109, 44 N. E. 1088.

■ The law in Massachusetts since the enactment of the statute above quoted is not widely different from that which has long obtained in the federal courts, where representations literally untrue have not always provided a good defense. In Moulor v. American Life Ins. Co., 111 U. S. 335, 4 S. Ct. 466, 471, 28 L. Ed. 447, Harlan, J., in considering what constituted true answers to questions propounded to an applicant for life insurance, said:

"In one sense, that only is true which is conformable to the actual state of things. In that sense, a statement is untrue which does not express things exactly as they are. But in another and broader sense the word

'true' is often used as a synonym of honest, sincere, not fraudulent. * * * What the company required of the application, as a condition precedent to any binding contract, was, that he would observe the utmost good faith towards it, and make full, direct, and honest answers to all questions, without evasion or fraud, and without suppression, misrepresentation, or concealment of facts with which the company ought to be made acquainted. * * * "

In No. 3282 I have found as a fact that the false representations were made with an actual intent to deceive, and I am strongly of the opinion that the good faith which the applicant owed the insurance company, as well under the Massachusetts statute as under established principles of law, required of Drooker that he disclose rather than conceal the fact that he had recently been, and then was, under the observation of his physician who had found and had treated him for sugar in his urine.

It follows, therefore, that in No. 3282 the policies in question may be decreed null and void. This conclusion renders it unnecessary to consider the further defense as to the validity of these policies, namely, that by their terms they have never taken effect. However, if I were called upon to do so, I should probably rule that the visit of the insured to Dr. Everett, solely for the purpose of urinalysis, months after all traces of sugar had disappeared, was not a consultation within the purview of the stipulation in the application which would prevent the policy from becoming effective.

In No. 3295 no actual intent to deceive was found. In Rainger v. Boston Mutual Life Ass'n, supra, it was held that if the false representations related to matters affecting the risk, it was immaterial whether the insured did not actually or knowingly intend to deceive the defendant. The statute provides alternatively that the policy shall be avoided if statements are made with intent to deceive, or if the matter misrepresented increases the risk.

It, therefore, remains to be considered whether I can, as requested by the complainant, rule as a matter of law that if Barnet Drooker failed to disclose to the complainant that, within three years prior to his application to the complainant for the issuance of policies of life insurance, sugar had been found in his urine, the complainant is entitled to rescind the policies.

There are conditions and diseases of such a nature that a failure to disclose them amounts to concealing a matter increasing the risk of loss within the meaning of the statute. That applicant was addicted to the excessive use of intoxicating liquor (Rainger v. Boston Mutual Life Ass'n, supra), or was afflicted with consumption (Brown v. Greenfield Life Ass'n, 172 Mass. 498, 53 N. E. 129), have been held as a matter of law to be misrepresentations increasing the risk. On the other hand, the fact that an applicant for life insurance failed to disclose that he had suffered from a strangulated hernia (Levie v. Metropolitan Life Ins. Co., supra), from angina pectoris (Foss v. Mutual Life Ins. Co., 247 Mass. 10, 141 N. E. 498), or from a disease of the kidneys (Hogan v. Metropolitan Life Ins. Co., supra), has been held insufficient to enable the court to say, as a matter of law, that the matters misrepresented increased the risk of loss. To which category does this case at bar belong?

In an early case, Judge Story observed that the test of materiality of a fact depends on whether it would have influenced the underwriters either not to underwrite at all or not to underwrite except at a high premium. Columbia Insurance Co. v. Lawrence, 10 Pet. 507, 9 L. Ed. 512.

See, also, Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202; Hare & Chase, Inc., v. National Surety Co. (D. C.) 49 F.(2d) 447, 457.

In Hare & Chase, Inc., v. National Surety Co., supra, Judge Mack observed by way of dictum that, "In life insurance, the weight of particular elements of a risk is ordinarily determinable by reference to the relation of that element to the average mortality."

While the evidence that the company relied upon a truthful answer to the question, "Has albumin or sugar been found in your urine?" is not to be wholly disregarded [Haddad v. New York Life Ins. Co. (C. C. A.) 42 F.(2d) 651], it is, of course, not controlling. On the other hand, of course, the fact that the insured did not die of diabetes is not material. Brown v. Greenfield Life Ass'n, supra.

It is, however, my opinion that the fact that two years before the application the applicant had shown slight traces of sugar in his urine does not necessarily have such an important and direct relation to the average of mortality as to allow the court to rule, as a matter of law, that the matter was material to the risk of loss. Rather, the question becomes one of fact. If the question arose on a suit brought by the beneficiaries against the insurance company, the

question would with the utmost propriety be left for the jury to decide upon all the evidence of the case. I am unable to give the requested ruling. It follows that in this case, No. 3295, the bill should be dismissed.

 I see no reason for allowing costs in either case, and except as to costs the complainant may have the relief prayed for in his bill of complaint in No. 3282. A decree dismissing the bill is to be entered in No. 3295.