**NEW YORK LIFE INS. CO. v. SIMONS et al.**
**No. 2673.**

Circuit Court of Appeals, First Circuit.
June 27, 1932.

MORTON, Circuit Judge, dissenting.

F. H. Nash, of Boston, Mass. (Stuart C. Rand and Richard Wait, both of Boston, Mass., on the brief), for appellant.

Wendell P. Murray, of Boston, Mass. (Isaac E. Simons, of Boston, Mass., on the brief), for appellees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an appeal from a decree in equity in the District Court of Massachusetts. 53 F.(2d) 859. The appellees' testate, who will be hereafter referred to as the applicant, procured from the appellant in July, 1928, two policies of insurance on his life, and in February, 1930, two more. The latter are the policies involved in this appeal. The appellant brought two bills in equity, one seeking the cancellation of the policies issued in July, 1928, and the other seeking the cancellation of the policies issued in February, 1930, and in each case on the ground of fraudulent misrepresentations.

The District Court issued a decree declaring the policies issued in July, 1928, to be null and void, but found there was no intent to deceive on the part of the applicant by the misrepresentations made in the application for the policies issued in February, 1930, and that the facts concealed by the appellant did not materially increase the risk.

No appeal was taken from the decree declaring the policies issued in 1928 null and void by the representatives of the estate of the applicant. The insurance company appealed from the decree dismissing the bill seeking to have the policies issued in February, 1930, declared null and void.

In his written applications for the policies, both in July, 1928, and in February, 1930, the following questions and answers appear, except that in the 1928 application the word "ever" does not appear in questions 7c, 8, and 10:

"7c. Has albumin or sugar ever been found in your urine? Answer: No.

"8. Have you ever consulted a physician or practitioner for or suffered from any ailment or disease of C the Stomach or Intestines, Liver, Kidneys or Bladder? Answer: No.

"10. Have you ever consulted a physician or practitioner for any ailment or disease not included in your above answers? Answer: No.

"11. What physicians or practitioners, if any, not named above have you consulted or been examined or treated by within the past five years? Answer: None."

The applications also contained the statement to the effect that the above answers were true, and that the company could act and rely on them.

The undisputed facts are that the applicant on September 16, 1926, did go to his family physician for medical treatment or an examination. Either on this visit or a month later on October 29, traces of sugar were found in his urine, and, as the District Court found, probably on the first visit. He went again on November 14, and in January, May, and September, 1927, and on March 1 and July 24, 1928.

His physician prescribed the usual antidiabetic diet, and after a period of six months all traces of sugar, even on a normal diet, disappeared on urinalysis made by his physician, and he was pronounced cured.

The District Court found the above facts, and that the answers made by the applicant as above set forth were not true. Although the family physician in signing the proof of death furnished to the appellant stated in answers to questions contained therein that he had treated the applicant for diabetes for a period of six months about three years before his death, and somewhat reluctantly admitted on cross-examination that he diagnosed his condition as diabetic at the time he was being treated, the District Court found that the sugar in the urine of the applicant did not necessarily indicate that the applicant was suffering from what is termed by the medical profession diabetes, but only from a temporary condition sometimes described by physicians as glycosuria, in which traces of sugar appear, but readily yield to dietetic treatment. The applicant died of pneumonia about May 1, 1930. During his last illness no sugar appeared on urinalysis, though traces of albumen did.

In the case involving the policies issued on the application made in July, 1928, the District Court found as a fact that the representations made by the applicant that no sugar had been found in his urine, and that he had not consulted a physician within five years, either for a disease of the intestines, kidneys, or bladder, or for any other ailment, were false, and that he knew them to be false, and that they were made for the deliberate purpose of deceiving the insurance company; and also found that, although there was evidence that the fact that sugar

was found in the applicant's urine was regarded by insurance companies as material to the risk, the condition of the deceased disclosed by the evidence in this case did not tend to shorten his expectancy of life or increase the risk.

Upon the finding, however, that the applicant had deliberately concealed material facts with intent to deceive the insurance company, a decree was made declaring the policies issued on the application filed in July, 1928, null and void.

But as to the policies issued in February, 1930, the District Court found that the applicant may then have been justified in believing that he was cured, and therefore in concealing these facts there was no intent to deceive; that his condition was not one that materially increased the risk, and refused to so rule as a matter of law as requested by the appellant.

■ This is an appeal in equity, and the case comes here to be heard on the record, except that facts found by the District Judge will be accepted by this court, unless the findings of fact appear to be clearly wrong. Keller v. Potomac Elec. Co., 261 U. S. 428, 444, 43 S. Ct. 445, 67 L. Ed. 731.

■ For an appellate court to hold that a finding of fact by a sitting justice in an equity case is clearly wrong, it is not necessary that there shall be no substantial evidence to support it; but, if it clearly appears to the appellate court that the great weight of the evidence is clearly contrary to the factual finding of the sitting justice, or the inference of the sitting justice from proven facts is unreasonable, then his finding may be disregarded, and the appellate court determine the facts from the evidence before it, or may draw different conclusions from the facts found.

Under the assignments of error of law, the appellant challenges generally the decree dismissing the bill; that the refusal of the District Court to rule that, since the answers in the application were false and a denial of material facts, they were fraudulent as a matter of law; and also a refusal to rule that, if the applicant failed to disclose to the complainant that less than four years prior to his application for the policies sugar had been found in his urine, the complainant is entitled to rescind the policies; and also that, if the applicant failed to disclose that within five years prior to the application by him for policies he had consulted a physician, the complainant was entitled to rescind the policies.

■ No question is raised as to the application of the Massachusetts statute, G. L. c. 175, § 186. It applies directly to all domestic companies and as a condition on which all foreign insurance companies can do business in Massachusetts, and in effect must be read into every policy issued by any such company. Abraham v. Mutual Reserve Fund Life Association, 183 Mass. 116, 66 N. E. 605; Hancock Mutual Life Ins. Co. v. Warren, 181 U. S. 73, 21 S. Ct. 535, 45 L. Ed. 755; Northwestern Life Ins. Co. v. Riggs, 203 U. S. 243, 254, 27 S. Ct. 126, 51 L. Ed. 168, 7 Ann. Cas. 1104.

■ Under this statute, the burden is on an insurance company in an equity proceeding to declare a Massachusetts contract for insurance void for misrepresentation in the application on which the policy was issued, or, as an affirmative defense in an action by the assured on the policy, to show that either the misrepresentation was made with intent to deceive, or the facts misrepresented materially increased the risk. McDonough v. Metropolitan Life Ins. Co., 228 Mass. 450, 117 N. E. 836.

■ Counsel for the appellant, however, argues and cites authorities in support of his contention that, if a misrepresentation in an application for insurance is as to a material fact, it follows as a matter of law that it is fraudulent and renders a policy issued thereon voidable. New York Life Ins. Co. v. McCarthy (C. C. A.) 22 F.(2d) 241; Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202.

But we do not think that under the Massachusetts statute the District Court erred in refusing to rule as a matter of law that, because the applicant misrepresented certain facts deemed material by the insurance company, it was done with an intent to deceive. Upon the evidence in this case, whether the false answers were made with intent to deceive was a question of fact to be determined by the Judge hearing the case. Levie v. Metropolitan Life Ins. Co., 163 Mass. 117, 39 N. E. 792. We are of the opinion, however, that the conclusion of the District Judge that there was no intent to deceive by the false statements in the application for insurance in February, 1930, was clearly wrong; and, if made with intent to deceive, he erred as a matter of law in not entering a decree that the policies issued on the application of Feb-

ruary, 1930, were also null and void. Conklin v. New York Life Ins. Co., 200 Wis. 94, 227 N. W. 251; Penn. Mutual Life Ins. Co. v. Craig, 136 Misc. 394, 240 N. Y. S. 56; Monjeau v. Metropolitan Life Ins. Co., 208 Mass. 1, 7, 94 N. E. 302.

We understand the reasoning of the District Judge to be that, since the applicant in February, 1930, may have believed that he was cured, there was no intent to deceive by concealing the facts that within three years he had been under treatment for sugar in his urine, and within two years he had been going to a physician for examination. The District Court, however, does not even find as a fact that the applicant actually believed he was cured, but only that under the circumstances he would have been justified if he had such belief. It appears, however, that he had no more medical assurance in February, 1930, that he was permanently cured than he had in July, 1928.

In the consideration of this case we start with the finding of the District Court with reference to the policy issued on his application of July 14, 1928, that his concealment in July, 1928, of the facts, that sugar had been found in his urine, and that he had been under medical treatment for it, was deliberate and with an intent to deceive the company. The District Court, therefore, must have found that in July, 1928, the applicant understood that the insurance company was entitled to be informed of these facts, that it deemed them material in determining whether it would accept the risk, and that the applicant was aware that, if disclosed, it might result in the denial of his application. As a result, the District Court held that the policy was void. The applicant did not appeal from this decision.

Is it a reasonable conclusion, then, that in February, 1930, a year and a half later, even though the applicant then believed that he was cured, the insurance company was any less entitled to be apprised of these facts in order that it might determine their significance as bearing on the risk, or that the applicant did not in 1930 as fully appreciate the importance of this information from the standpoint of the company and its bearing on his risk as in 1928, and did not conceal them for the same reason that he did in 1928?

If this case were an isolated instance, and if it did not already appear that the applicant in July, 1928, appreciated that the company was in good faith entitled to this information, a different conclusion might be reasonably arrived at. But we have the finding of the District Court that he had already knowingly practiced deceit on the company after his physician had pronounced him cured by withholding this information, and it does not appear that he had taken any steps to ascertain whether the cure was permanent between July 24, 1928, and February 4, 1930.

The questions asked by the examining physicians for the insurance company did not involve an opinion as to whether he was cured, but a categorical answer as to whether he had consulted a physician within five years and whether sugar had been found in his urine. These were facts which in good faith the company, regardless of the Massachusetts statute, was entitled to know. Stipcich v. Metropolitan Life Insurance Co., 277 U. S. 311, 48 S. Ct. 512, 72 L. Ed. 895; Adler v. New York Life Ins. Co. (C. C. A.) 33 F. (2d) 827, 832; Mutual Life Ins. Co. v. Hurni Packing Co. (C. C. A.) 260 F. 641, 645. If the questions had related to his present condition, an honest belief that his condition had changed might militate against any conclusion that the concealment of any facts relating to his condition at the time of making the second application was with an intent to deceive. But the representation was as to past transactions and conditions about which the company was entitled to be informed in passing on his application.

A urinalysis disclosing sugar is not like a consultation for, and treatment of, some trivial matter, like a common cold, or a slight cut or scratch, the concealment of which might well be found to involve no intent to deceive; but the evidence disclosed, and we think it can be said to be common knowledge, that insurance companies deem the appearance of sugar in an applicant's urine as material to the risk and make a very careful investigation to ascertain its significance, and whether the conditions, in their judgment, materially increase the risk and require special rates or rejection of the application.

The appearance of sugar in one's urine may augur serious consequences, or a tendency to serious consequences. It is evident that the deceased appreciated this, and, as the District Court found, fraudulently concealed it from the company in July, 1928. It could not be reasonably found, we think, that he had forgotten on February 4, 1930, that in good faith he was bound to disclose these facts to the company. The District Judge does not so find. That the applicant even believed that he had been cured would not excuse him for stating falsely in 1930 the facts that he had been treated for this trouble

by a physician, which he knew were material in determining the risk, nor was the insurance company any less entitled to know these facts because they did not in fact contribute to his death. Hurt v. New York Life Ins. Co. (D. C.) 41 F.(2d) 392, 394.

A representation in an application is material in the determination by an insurance company of the desirability of a risk, if in the course of the general experience of insurance companies it may affect the risk, though under the Massachusetts statute it shall not be deemed material or avoid a policy, unless made with intent to deceive, or the facts concealed materially increase the risk.

In Mutual Life Ins. Co. v. Hurni Packing Co. (C. C. A.) 260 F. 641, 645, the court well said: "A chief part of any insurance company's business is a discrimination in selecting risks lest the natural and average losses may be exceeded. The purpose of the inquiries made as to prior consultations or treatments by physicians is to furnish to a life insurance company the information, either that the applicant has had continuous prior good health or the names of the practitioners consulted, so that the company may decide what further inquiries should be made in view of such disclosures. That such consultations were for what seemed to the applicant or his physician but trivial ailments is beside the question. It is the materiality to the company's investigation and decision as to acceptance of the risk that is involved. Inquiries as to prior attacks necessitating the attendance of physicians may disclose information not to be found by the medical examiner's own efforts. The history of the patient may be quite essential to supplement a physical examination."

In Jeffries v. Economical Mutual Life Insurance Co., 22 Wall. 47, 54, 22 L. Ed. 833, the court said: "Whether a question is material depends upon the question itself. The information received may be immaterial. But if under any circumstances it can produce a reply which will influence the action of the company, the question cannot be deemed immaterial." Questions material in this sense, to which false answers are made in an application, have a bearing in determining whether there was an intent to deceive.

No doubt insurance companies have in the past taken advantage of a public ignorant of the law by technicalities and phrases in applications having meaning incomprehensible to the average layman, and, indeed, to many lawyers. On the other hand, the insurance companies have to guard against unscrupulous persons, who, finding themselves in serious physical condition, undertake by misrepresentations to obtain relief for themselves in case of accident, or for their dependents in case of death.

The searching questions in the application and a medical examination are the only way the insurance companies have to protect themselves from the latter, and the Legislatures of many, if not all, the states have undertaken by legislation, such as the statute quoted from the Massachusetts law, to protect the public from frivolous technicalities and unreasonable conditions.

The misrepresentations in this case may not actually have affected the company, as the conditions existing in 1926–1927 are not shown to have made him any less resistant to the dread pneumonia germ, or in any way affected the result of his last illness; yet he obtained the policies now under consideration by false statements, by which he intended to deceive, and did deceive, the company as to facts, of which in good faith the company was entitled to be informed, which under the Massachusetts statute is sufficient to defeat or avoid an insurance policy, even though it is not shown that the risk was thereby materially increased. Levie v. Metropolitan Life Ins. Co., supra; Rainger v. Boston Mutual Life Association, 167 Mass. 109, 44 N. E. 1088; Monjeau v. Metropolitan Life Ins. Co., supra; Collins v. Casualty Co. of America, 224 Mass. 327, 331, 112 N. E. 634, L. R. A. 1916E, 1203; Brown v. Greenfield Life Association, 172 Mass. 498, 503, 53 N. E. 129; also see Penn Mutual Life Ins. Co. v. Mechanics' Savings Bank & Trust Co. (C. C. A.) 72 F. 413, 38 L. R. A. 33.

The decree of the District Court is reversed, with costs, and the case is remanded to that court, with directions to enter a decree declaring both policies issued in February, 1930, null and void.

MORTON, Circuit Judge, dissents.