Sarah R. **HAYMAN**, Plaintiff,

v.

**ALL AMERICAN LIFE AND CAS-
UALTY COMPANY**, Defendant.

Civ. No. 645–71.

United States District Court,
D. Puerto Rico.

Feb. 12, 1975.

Irwin Zemen, Santurce, P. R., for plaintiff.

F. Castro Amy, San Juan, P. R., for defendant.

## OPINION AND ORDER

PESQUERA, District Judge.

Defendant, All American Life and Casualty Company, has moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure alleging in substance that there is no genuine issue as to the fact that James E. Hayman omitted to state and concealed from defendant insurer in his application for the life insurance object of this action, certain material facts which, had they been known to defendant, it would not have issued the policy. Defendant's motion is supported by several pieces of

documentary evidence which will be identified during the discussion that follows.

Plaintiff has filed an opposition alleging the existence of a genuine issue of fact as to the materiality of the representations made by James E. Hayman in his application for the life insurance policy and more specifically on defendant's failure to conduct an independent inquiry upon the alleged notice given by James E. Hayman of his heart condition.

Upon the examination of the pleadings, the application for the policy and the life insurance policy, the answers to the request for admissions, copies of the medical records of James E. Hayman, the affidavit of Gerald T. Dvorak, the affidavits of Mrs. Sarah R. Hayman and Dr. Calixto Romero, and after having been advised on the premises, the Court makes the following

*Findings of Fact*

1. On October 31, 1969, James E. Hayman, plaintiff's deceased husband, submitted to defendant All American Life and Casualty Company an application for life insurance in the amount of $10,000 and dsignating plaintiff as beneficiary of the proceeds of said insurance policy.

2. Mr. James E. Hayman was a member of the Navy League of the United States and his application for life insurance came as a result of a letter circulated among the members of the Navy League whereby the benefits and convience of applying for life insurance were explained. Said letter, signed by Mr. James M. Hannan, as president of the Navy League, stated that no physical examination was required in order to qualify as an insured but, that the insurance company did reserve the right to accept or reject applications based on answers provided in the health questionnaire of the application.

3. Upon the application of Mr. James E. Hayman, defendant All American Life and Casualty Company issued life insurance policy #G–357 0501704 with a date of issue of November 1, 1969.

4. In the application for life insurance, Mr. James E. Hayman was required to answer five questions related to his health condition, as follows:

(a) Are you now in good health and free from impairment and disease?

To this question, he answered. Yes.

(b) Are you now receiving or contemplating any medical attention or surgical treatment?

To this question, he answered, No.

(c) Have you ever had heart trouble, high blood pressure, albumin or sugar in your urine, tuberculosis, cancer, tumor, ulcers, mental or nervous disorder?

To this question, he answered, Yes, and explained in the space provided that he had suffered a myocardial infarction in 1953, a condition that lasted for three weeks and for which he had been treated at Ramey Air Force Base Hospital and had obtained full recovery.

(d) Have you, during the past five (5) years, consulted any physician or other practitioner or been confined or treated in any hospital, sanitarium or similar institution?

To this question, he answered, Yes and expressed in the space provided that the attending or consulted physician had been Dr. Calixto Romero, Box 9171, Santurce, P. R.

(e) Have you had any routine physical examinations or checkups?

To this question, he answered, Yes and explained in the space provided that he had suffered from a stomach condition in 1968 with a duration of one week for which he was treated at the Auxilio Mutuo Hospital in Hato Rey and had obtained full recovery.

Following the space provided for details to any affirmative answer to the above questions, there is a note in parenthesis, in the same type of print as the whole application, which instructs that

"If additional space is needed, attach separate sheet". There are no separate sheets attached to the application for life insurance of Mr. James E. Hayman.

5. In 1953, Mr. James E. Hayman suffered an attack of acute myocardial infarction for which he was treated at Ramey Air Force Hospital for a period of three weeks with an uneventful recovery. This was disclosed in his application for the life insurance policy.

6. In 1960, Mr. Hayman again suffered another myocardial infarction for which he was treated by Dr. Calixto Romero for several years. This incident of his medical history was not disclosed in his application for the life insurance policy.

7. In 1963, Mr. Hayman had another episode of coronary insufficiency, at which time anticoagulants, with which he had been treated, were discontinued due to a reactivation of symptoms of bleeding due to a peptic ulcer which had its inception in 1948. This incident in his medical history was not disclosed in his application for life insurance policy.

8. During the years 1968 and 1969, Mr. Hayman had been having angina on moderate effort. This incident of his medical history was not disclosed in his application for insurance policy.

9. From July 8, 1969 through July 10, 1969, Mr. Hayman was hospitalized at Auxilio Mutuo Hospital due to a bleeding duodenal ulcer and was treated by Dr. Calixto Romero. Again, this incident in his medical history was not disclosed in his application.

10. On October 5, 1969 through October 10, 1969, Mr. Hayman was hospitalized at the Auxilio Mutuo Hospital on account of an acute pancreatitis with a final diagnosis of duodenal ulcer with probable early perforation and a secondary diagnosis of an old myocardial infarct and was treated by Dr. Calixto Romero. This aspect of his medical history was not disclosed in his life insurance application.

11. On October 16, 1969, Mr. Hayman was again hospitalized at the Auxilio Mutuo Hospital until October 29, 1969 by reason of a thrombosis caused by the obstruction of the left popliteal artery for which he was treated by Dr. Calixto Romero. He also failed to disclose this incident in his life insurance application.

12. Defendant All American Life and Casualty Company relied on the representation made by Mr. James E. Hayman in his application for life insurance policy and did not conduct a physical examination of the applicant, neither did it make further inquiries as to Mr. Hayman's medical condition and/or history.

13. The life insurance policy subject of this action is one commonly referred to as "non-medical" in which the applicant's representations are material to the issuance of the policy.

14. That at the time of the application of Mr. James E. Hayman for issuance policy, defendant was using an Appraisal Chart published by the Continental Assurance Company as a guide to determine insurability in appraising life insurance risks.

15. Pursuant to this guide (Continental's chart), where, a heart attack or coronary artery disease has occurred, it is suggested that the insurable risk be evaluated with as much information as possible, to include attending physicians' statements, EKGs and medical records that can be obtained. The guide provides: "Once a heart attack has occurred with subsequent complete recovery, the underwriting problem is evaluating the probability of the next attack and when it will occur. The percentage of deaths increases markedly with each succeeding attack". In substance, the guide provides an evaluation of the risk involved by way of an examination of the past history of the applicant with any continuous or recurrent heart failure decreasing the insurability of the applicant. Here, the only incident of a

heart condition being evaluated had occurred sixteen years prior to the date of the evaluation, reducing the probabilities of a recurrence and the mortality rating to zero.

16. If defendant All American Life and Casualty Company would have known of Mr. Hayman's complete history of heart deficiency, it would not have issued the insurance policy. The misrepresentation of Mr. Hayman as to the periods of treatment and hospitalization for his heart condition were material to the acceptance of the risk.

17. Mr. James E. Hayman died on September 26, 1970 at the age of fifty-two with immediate cause of his death being a myocardial infarction due to an arteriosclerotic heart deficiency which had lasted for over eighteen years. Said condition being attested on his death certificate by Dr. Calixto Romero.

### Conclusions of Law

■ Jurisdiction of this action is prayed under 28 U.S.C. § 1332 by virtue of the diversity of citizenship of the parties and the fact that the amount in controversy exceeds the amount of $10,-000 exclusive of interest and costs. On that basis, the controlling law is that of the Commonwealth of Puerto Rico in regard to the issue of the materiality of the representations made on the life insurance policy.

Section 11.100 of the Insurance Code of Puerto Rico, Law No. 77 of the Act of June 19, 1957, 26 L.P.R.A. Section 1110, provides that

"All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy unless:

(1) Fraudulent; or

(2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(3) The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

When the applicant incurs in any of the actions enumerated in paragraphs (1), (2) and (3) of this section, the recovery shall only be prevented if such actions or omissions contributed to the loss that gave rise to the action."

■ Under the above quoted provisions, misrepresentations, omissions, concealment of facts and incorrect statements made in an application for insurance policy, prevent recovery under the policy if they are material to the acceptance of the risk or if the insurer in good faith would not have issued the policy if the true facts had been known to the insurer as required in the application.

■ Where a non-medical policy is in issue, that is, one requiring no prior medical examination, the representations of the insured are of special significance. The information which the insured provides by way of the answers to the questionnaire in the application, which is made a part of the insurance policy contract, forms the basis of the policy and defines the risks of the insurer. If they are not true, they preclude any recovery under the policy. They invalidate the policy without further proof of actual conscious design to defraud. Guariglia v. John Hancock Mutual Life Insurance Co., 139 Conn. 54, 90 A.2d 162, 163 (1952); Coleman v. Aetna Life Ins. Co., 261 F.2d 296 (7 Cir. 1958); New York Life Ins. Co. v. Simons, 60 F.2d 30 (1 Cir. 1932).

The case of Sandoval v. Puerto Rico Life Insurance Co., 99 PRR 287 (1970), although not directly in point, does establish the relation that must exist between the misrepresentations and the loss that gives rise to the action for the

proceeds of the policy in order to prevent recovery. The case of *Sandoval* stands for the proposition that if the insured knows of a physical impairment, and fails to reveal or misstates the same, and said impairment contributes to the death or disability of the insured, the insured will be prevented from recovering on the policy.

■ When the insured completed his application for life insurance, he had just been out of th hospital for two days after suffering from an occlusion of the left popliteal artery. Answering "yes" to the question of whether he was on that day in good health and free from impairment and disease was a material misrepresentation. The term "good health" is considered to mean that the applicant has no grave, important or serious disease, and is free from any ailment that seriously affects the general soundness or healthfulness of the system. Zogg v. Bankers' Life Co. of Des Moines, Iowa, 62 F.2d 575 (4 Cir. 1933).

■ It is not reasonable to construe Mr. Hayman's answers in the application for life insurance to mean that by indicating the 1953 incident of myocardial infarction, the insurance company would investigate his medical history from that far back and that upon such investigation, it would make a complete evaluation of his hale condition. Pacific Mutual Life Ins. Co. v. Miller, 6 Cir., 228 F.2d 889; MFA Mutual Ins. Co. v. Lusby, D.C., 295 F.Supp. 660.

Even if viewed in the light more favorable to the plaintiff, and considering that an insurance contract should be interpreted liberally in favor of the insurer, it is not possible to consider as a matter for the jury the materiality of the representations herein being examined. Where, as in this case, there is no substantial conflict of evidence as to the materiality of the statements and absent the need of proof of intention to deceive, it is for the Court to decide as a matter of law. Zogg v. Banker's Life Co. of Des Moines, supra.

Under the circumstances of this case, the insurer was not bound to investigate statements made by the applicant for life insurance, rather it was the applicant's duty to divulge fully all he knew and his beneficiary cannot escape the consequences of his deception. San Francisco Lathing Co. v. Penn Mut. Life Insurance Co., 144 Cal.App.2d 181, 300 P.2d 715; State Farm Mutual Automobile Insurance Co. v. Riffe, D.C., 325 F.Supp. 190; Appleman's Insurance Law and Practice, Section 7294.

In this case, the insured with knowledge of his long history of heart deficiencies for over a period of fifteen years, failed to reveal fully the salient facts of his medical history and cannot escape the consequence of forfeiting the proceeds of the policy for his beneficiary. Guariglia v. John Hancock Life Insurance Co., supra.

For the foregoing reasons, we hold there is no controversy as to the fact that Mr. James E. Hayman, decedent's husband of plaintiff, misrepresented and concealed facts which were material to the acceptance of the risk and which, if known to defendant, it would not have issued the policy, and consequently, that as a matter of law, defendant is entitled to judgment inasmuch as these concealment and misstatement of the facts contributed to the loss that gave rise to the present action.

Therefore, summary judgment should be and is hereby entered against plaintiff and for the defendant with costs but without payment of attorney's fees.