JOSEPH ABBOTT *versus* HAMPDEN MUTUAL FIRE INSURANCE COMPANY.

A *feme covert* was tenant for life in one third of a lot of land, and tenant for years of the other two thirds. Her husband erected a house on the land, and caused it to be insured as his property, by the defendants, for four years. One article of the defendants' by-laws was, that the policy should be void, if the assured should sell or alienate the property in whole or in part, without their consent. During the life of the policy, the plaintiff and his wife conveyed to the reversioner her life estate, on condition that the grantee should pay her a fixed sum annually, during her life. The plaintiff at the same time, conveyed to said reversioner all his interest in the other two-thirds, and took back a mortgage upon the whole estate to secure the payment of several sums in yearly instalments. The mortgager entered into possession. The house was afterwards destroyed by fire before any of the abovementioned sums had become payable by him. *Held,* that the plaintiff at the date of the policy, had an insurable interest in the house; *held also,* that by said conveyances, the house became a part of the realty; *held also,* that said conveyances constituted such an alienation as defeated the policy.

To constitute such an alienation, it is not necessary that there should be an absolute tranfer of the whole or of any distinct portion of the property. If there has been such disposition of it, that any property has been passed to another, the alienation has occurred.

TENNEY, J. — The ninth article of the by-laws of the company, provides among other things, that if the assured shall have sold or alienated the property in whole or in part, without having transferred the policy to the purchaser or the alienee, with the consent of the company, then the policy shall be void and the whole amount of the premium shall be forfeited to the company. The case agreed by the parties does not show, that in the sale or alienation made, (if any was made,) by the plaintiff, of the property insured, he had in any manner the consent of the company. The question upon this branch of the case then is, whether there was such a sale or alienation of the property insured, or any part thereof, as contemplated by the parties in the policy.

Immediately before the transaction, relied upon in the defence as an alienation, the wife of the plaintiff, under the will of her former husband, had a life estate in one undivided

third part of the land, on which the house destroyed was situated. The residue of the land by the same will was held by the wife, till her son, Asa L. Cartland, arrived at the age of twenty-one years, which was sometime previous ; and after that he became the owner in fee of that portion of the land. The house lost, was built by the plaintiff upon this land, and, as his counsel insist, it was his property. On the 17th day of September, 1844, the plaintiff and his wife joined in a deed of conveyance of one undivided third part of the land, including the same proportion of the house, to Asa L. Cartland, on condition that the grantee should pay to the plaintiff's wife, annually during her lifetime, the sum of $50, and on failure to make payment according to the terms of the condition, the deed was to become void. At the same time, the plaintiff gave to Cartland a quitclaim deed of the remaining two-thirds ; and on the same day, the grantee in those two deeds, conveyed in mortgage to the plaintiff, the whole of the premises, to secure the payment of the sum of $500, payable in five equal annual instalments ; and the mortgager was in possession at the time of the loss.

The deed from the plaintiff and his wife, passed to the grantee a freehold estate, subject to be defeated by a breach of the condition. By well established principles of law, an estate of freehold which has vested cannot fail by the omission of the grantee to perform the condition, without an entry for the breach of such condition. This rule however is not universally true. An exception is where the person, who is to be benefited by the condition, already has the possession. Co. Litt. 218, a. The time had not arrived on the event of the loss, when Cartland was bound to perform the condition ; and he being in possession, the exception to the general rule mentioned could not apply. The deed of the two-thirds of the land from the plaintiff passed to the grantee, all the interest which the grantor had in the land and the buildings attached thereto ; the two deeds therefore conveyed to Cartland a title to the land and the buildings. It cannot be denied that this taken by itself constituted an alienation, which is defined

in Jacob's Law Dictionary to be " the transferring the property of a thing to another." Noah Webster defines the meaning of alienation, "the transfer of title." This would bring the plaintiff into that predicament, which would operate to render void the policy, if the literal import of the ninth article in the by-laws should be adopted. But in questions upon policies of insurance, a liberal construction in favor of the assured has been given, in their interpretation, so that the real intention of the parties, should not be defeated. And it is contended for the plaintiff, that the conveyance to Cartland, being conditional as to one-third part thereof, and being accompanied by a reconveyance by him in mortgage as a part of the same transaction, there was not such an alienation of the property or any part thereof, as would avoid the policy.

The right to enter upon one third of the property conveyed by the plaintiff and his wife, after a breach of the condition, would be for a failure in the grantee to do what was for the wife's benefit alone, and so far at least as she was the exclusive owner, the husband could exercise no control without her consent. Statutes of 1844, chap. 117, and of 1847, chap. 27. After her death no interest would exist in the husband, so far as the *land,* in which she had a life estate is concerned, if he survived her, according to the facts in the case.

By the mortgage the fee in the land passed to the plaintiff, as between the parties thereto, and he had the right to enter as well before as after the breach of the condition. But his estate in the house and the whole of the premises was essentially changed by the entire transaction. The taking of the mortgage did not restore him to the situation in which he stood before the conveyance. He has by the mortgage an interest in all the land, whereas he had none whatever before, in two-thirds thereof, and none in the remainder, excepting the right of his wife. If the plaintiff had no title to the house before the conveyance, he was not possessed of any insurable interest. If the house was built by him, under such authority as gave any right thereto, he had in it, the entire title. By the transaction of the 17th of September, 1844, Cartland acquired

an important interest in the property insured, where he had none before. What was that interest? The house had by means of the deeds and the mortgage, become a part of the real estate, and would be subject to all the principles of law applicable thereto, as real estate, situated as that was. The plaintiff was the mortgagee not in possession, and having no right to enter for condition broken. Cartland was the mortgager in possession.

In *Eaton* v. *Whitney*, 3 Pick. 484, the Court say, "the mortgage is in fact but *a chose in action*, at least until entry to foreclose, and although the legal effect of the mortgage is to give an immediate right of entry, or of an action to the mortgagee, yet the estate does not become his in fact, till he does some act to divest the mortgager, who to all intents and purposes, remains the owner of the land, till the mortgagee chooses to assert his rights under the mortgage." Again, "the equity of redemption, is considered to be the real and beneficial estate, tantamount to the fee at law, and it is accordingly held to be descendible, by inheritance, devisable by will and alienable by deed, precisely as if it were an absolute estate at law." 4 Kent's Com. Lecture 57, page 153. This interest of the mortgager continues till foreclosure; the entry for that purpose is merely to fix the time, when the three years, which is to cause it, shall commence. *Smith* v. *People's Bank*, 24 Maine, 185.

The interest of a mortgager in property in the situation in which this was at the time of its destruction, is an insurable interest; and in Massachusetts, it has been held, that where a house insured against fire, had been mortgaged by the assured, and his right to redeem had been seized on execution at the time of effecting the policy, and he did not state this at the time he applied for the policy, it was not a material concealment.

To constitute an alienation of property, it is not necessary, that there should be an absolute transfer, of the whole or any distinct portion of it. But if there has been such disposition of it, that any property therein has been passed to another, it

cannot be doubted, that there has been an alienation of the property in part.

In the policy given to the plaintiff, as is usual in such cases, the defendants took care, that it should not become a wagering policy, and provided, that the assured should hold the interest until it should be changed by their own consent. " Mutual offices should have the power of exercising a discretion, in the selection of persons, whom they may admit to membership, and whose property they may insure. The character of the person. insured may be a subject of importance. If by conveyance of the estate and the assignment of the policy, the purchaser would stand in the place of the insured, and be entitled to indemnity under the policy, the office might be defeated of this right of selection." *Lane* v. *M. M. Fire Insurance Co.* 3 Fairf. 44.

It may perhaps be fairly inferred, that the mortgage given by Cartland was for security of money due on account of the house, and the life estate of the plaintiff's wife ; but whether the sum was regarded as the whole of the consideration for the house or not ; or whether any payment was made therefor at the time of the conveyance does not appear. The mortgager had it in his power by the payment of the sum secured to take away entirely the interest of the plaintiff ; and that such was his design, must be presumed. In no event could the plaintiff's interest at any given time, be greater than the sum which should then be due, if redemption should ever take place. As the sum should be reduced, the interest would diminish in the same proportion. " Generally speaking," says C. J. Marshall, in Peter's S. C. Rep. vol. 2, page 25, " insurances against fire are made in the confidence, that the assured will use all the precautions, to avoid the calamity insured against, which would be suggested by his interest. The extent of his interest, must always influence the underwriters in taking or rejecting the risk, and in estimating the premium."

We cannot doubt that there was such an alienation as to make void the policy.

Several other points were raised and discussed in argument ;

but the view which we have taken of the one, which we have examined, renders it unnecessary to give the others consideration. *Judgment for the defendants.*