MARY I. HUGHES, Admrx.,

*vs.*

METROPOLITAN LIFE INSURANCE COMPANY.

Androscoggin.    Opinion March 30, 1918.

*Life Insurance contract. Fraud or misstatements in application. General rule*
*as to the knowledge of the agent binding the Company. False statements*
*as to whether applicant has consulted or been treated by a physician.*

There are two actions of assumpsit brought by the Administratrix of the estate of George A. Gordan upon two policies of life insurance. The first policy was issued February 23rd 1915, for the amount of fire hundred dollars. The second was dated June 4th 1915, and was for one thousand dollars. The insured died September 8th 1915.

The defendant company resists payment on the ground that the insured misstated the facts with reference to his having had a disease of the heart and kidneys; his habits as to his use of intoxicating liquors; his treatment at a sanitarium or hospital, and his treatment by other physicians.

The plaintiff at the trial, contended that those answers which were in fact proved to be false by the defendant company, were waived by it, because of the fact that the agent, Mr. Tabachnick, whose name appeared on the policy and who effected the insurance, had knowledge of the true facts. It was also contended that the medical examiner was an agent of the company. The jury found for the plaintiff in each case.

These cases come up on motion and exceptions.

*Held:*

1.  The medical examiner is not an agent of the company, either under the statute or the common law.

2.  That the knowledge of the agent is constructive knowledge of the company, under the statute, regardless of the source, from whom the agent's knowledge may come.

3.  That so far as material false representations to the medical examiner are known to the agent they are known to the company.

4.  That, on the contrary, any material false representation made to the medical examiner if not known to the agent is not the knowledge of the company.

5.  That so far as material false representations made to the medical examiner, coincide with the agent's knowledge, thereof, they are constructively known to the company.

6.   But that beyond such coincidence they are not constructively known to the company, will not be deemed to be waived, will operate as a fraud, and vitiate the policy.

7.   That in the medical examination in each policy, are found material false representations beyond the knowledge of the agent.

8.   That, for these reasons the policies are void.

Action of assumpsit to recover amount due on two policies of life insurance.   Defendant filed plea of general issue, and also brief statement setting forth in substance that certain statements claimed as warranties in the application were not true, but on the contrary false. Verdict for plaintiff on each policy for the amount due thereon. Defendant filed motion for new trial; also exceptions to certain rulings of presiding Justice.   Judgment in accordance with opinion.

Case stated in opinion.

*Benjamin L. Berman, and Jacob H. Berman,* for plaintiff.

*White & Carter,* for defendant.

SITTING:   CORNISH, C. J., SPEAR, HANSON, PHILBROOK, JJ.

SPEAR, J.   These are two actions of assumpsit brought by the Administratrix of the estate of George A. Gordan upon two policies of life insurance.   The first policy was issued February 23rd 1915, for the amount of five hundred dollars.   The second was dated June 4th 1915, and was for one thousand dollars.   The insured died September 8th 1915.

The defendant company resists payment on the ground that the insured misstated the facts, with reference to his having had a disease of the heart and kidneys; his habits as to his use of intoxicating liquors; his treatment at a sanitorium or hospital, and his treatment by other physicians.

The plaintiff at the trial, contended that those answers which were in fact proved to be false by the defendant company, were waived by it, because of the fact that the agent, Mr. Tabachnick, whose name appeared on the policy and who effected the insurance, had knowledge of the true facts.   The jury found for the plaintiff in each case.

These cases come up on motion and exceptions.   The first exception raises the question, whether the defendant company is bound by the knowledge of its agent.   As this exception is solved in the discussion and determination of the motion, it is unnecessary to refer to

it specifically. It may also be said that the second exception, which raises the question, whether the medical examiner is an agent for the company whose knowledge of the risks binds the company, was taken care of by the charge of the presiding Justice, but will be referred to as it becomes material in a discussion of the motion.

The result of the motion depends upon the construction of the following statute, found in R. S., Chap. 53, Sec. 119: "Such agents. . . . shall be regarded as in the place of the Company in all respects regarding any insurance effected by them. The Company is bound by their knowledge of the risk and of all matters connected therewith. Omissions and misdescriptions known to the agent, shall be regarded as known by the Company, and waived by it as if noted in the policy."

The language of this statute has been so often construed that citation of cases is no longer necessary.

Under this statute there can be no question that the knowledge of Tabachnick, the agent, who represented the company, must be regarded as the knowledge of the company with reference to every physical and mental condition of Gordan of which he had knowledge, and of the medical or other treatment which he knew he had received, whether administered in a sanitorium or elsewhere; and any misrepresentations by Gordan in the application, which were within the knowledge of the agent, however obtained, were the knowledge of the company, and, in the language of the statute, must be deemed as "waived by it as if noted in the policy."

. But Gordan, the insured, made representations not only to the agent, Tabachnick, whose name appeared upon the policy, but to the medical examiner. The medical examination when completed was not turned over to the agent, but forwarded directly to the home office. The term "agent" is here used to designate the agent of company, within the meaning of the statute.

At this juncture, arises occasion for noting the distinction that differentiates the knowledge of the agent, in its effect upon the responsibility of the company, and the knowledge of the medical examiner, in the same regard: Did Gordan make any material false representation in his medical examination of which Tabachnick did not, in fact, have knowledge? If so, it cannot be regarded as the knowledge of the company, and to have been waived, even though the medical examiner had knowledge of its falsity. It is contended,

however, by the plaintiff that the medical examiner is an agent of the company which employs him, and that his knowledge of the risk comes within the purview of the statute and binds the company. But this contention cannot be conceded. There is no rule of common law by which he becomes such agent, and the statute limits such agency to those whose names are borne on the policy, and upon whom service of all notices and processes may be made.

Without further discussion, we are of the opinion that a medical examiner is not, in contemplation of the statute, an agent of the company by whom he is employed, but an employe.

But the plaintiff further contends that the wording of the statute "such agents. . . . shall be regarded as in the place of the company in all respects regarding any insurance effected by them," means just what it says—all respects—"whether it appears in answer to questions propounded by the agent or medical examiner." In other words, if the knowledge of the agent is the knowledge of the company, then the company has all the knowledge that the agent has, and, if a misrepresentation came to the company through the office of the medical examiner, if the fact about which the representation was made was known to the agent, it would be the knowledge of the company. Granting this, yet a false statement by the insured to the medical examiner, communicated by him to the company, itself, would not be the knowledge of the company, unless it had knowledge of the falsity; a fortiori, a false statement to the medical examiner, communicated by him to the agent is not the knowledge of the agent, if "in all respects" the company, unless the agent had actual knowledge of its falsity. Hence the medical examiner, not being an officer, whose knowledge is the knowledge of the company, is not an officer whose knowledge is the knowledge of the agent. The medical examination, accordingly, adds nothing to the actual knowledge of the agent, in regard to the facts therein stated. It however further appears, uncontradicted, that the medical examination in these cases did not go into the hands of the agent at all, but were sent directly by the examiner to the company. If so, for this reason, also, the agent could not be charged with knowledge of answers he had never seen.

In view of this interpretation, the defendant contends that the plaintiff is at once concluded; that if the medical examiner is not an agent, under the statute, a material false representation communicated to him and by him to the company, is a false representation to

the company, regardless of the knowledge of the agent; that the only false representations by which the company is bound are such as are made directly to its agent, and are known by him to be false.

But this contention cannot prevail. It would thwart the plain language of the statute, that the company is bound by the agent's "knowledge of the risk and all matters connected therewith." There is no limitation upon the source of his knowledge. A reasonable interpretation clearly imparts to the statute an intent to hold the company responsible for material false representations made to the medical examiner, although not known by him to be false, provided they were, in fact, known to the agent to be false. In such case the knowledge of the agent is the constructive knowledge of the company. Accordingly, when the company is once charged with constructive knowledge of facts, false representations in the medical examination, in regard to the same facts, become immaterial, as the company cannot be deceived in regard to what it already constructively knows, through the knowledge of its agent, and will be bound by this knowledge in all dealings with its policy holders.

Therefore, so far as material false representations to a medical examiner are known to the agent, they are known to the company; but, on the other hand, any material false representation made to the medical examiner, which was not known to the agent, is not made the knowledge of the company either by the statute, or common law. That is, just so far as material false representations to the medical examiner, coincide with the agent's knowledge, thereof, they are constructively known to the company, and binding upon it; but beyond such coincidence, such false representations are not constructively known to the company, will not be deemed to be waived, will operate as a fraud and vitiate the policy. Applying this rule of interpretation to the facts we find the following results.

We will first consider the five hundred dollar policy. The testimony shows that material false representations were made by the plaintiff's decedent, as appears in his "statements made to the medical examiner." Paragraph 4 of the medical examination contains this statement: "The following is the name of the physician who last tended me, the date of the attendance and the complaint for which he attended me. Dr. Haskell one year ago for grippe." This examination was February 18, 1915. Dr. Haskell testified that he treated him for a cold in 1913, and at his office on June 13, 1914, and

June 19, 1914. These last two visits were both within two years from date of the examination. The doctor also says he treated him, not for grippe, but for valvular heart trouble and nephritis—kidney condition. On cross-examination the doctor says the dates upon which he treated him for these troubles were the 13th day of June, 1914, and the 19th day of June, 1914. These dates were based upon memoranda. To the inquiry. Q. You treated on those occasions for the cold? A. No, sir, valvular heart trouble and nephritis. The doctor further says he prescribed for him for the valvular heart trouble, and also for nephritis, "all together." The doctor was not asked whether he told the patient of the malady with which he found him suffering, but the necessary presumption is that Dr. Haskell, charged with the observance of professional ethics, told his patient the truth rather than a voluntary falsehood. It is altogether improbable that the doctor told him he had grippe, when he did not have it, but an entirely different malady; therefore, the reasonable presumption is that he prevaricated in his answer to the medical examiner, in regard to the disease for which he was treated, by Dr. Haskell. This presumption is strengthened by the unfortunate fact that the decedent is admitted to have made false representations in other respects in his application. We regret to say the admission is thoroughly established by the evidence.

Although the burden is on the plaintiff, it is not proven by any evidence in the case that the agent, assuming he knew about the decedent all it is claimed he did, (and we think he did) had any knowledge whatever of the fact that the applicant had been several times to Dr. Haskell and had been treated for heart disease and nephritis, the latter being the disease with which he died within a year. Had the agent known this we doubt if he would have had the audacity to conceal it.

The above answers were made with reference to the five hundred dollar policy, but they are found to be of the same false character in paragraphs 12, 13, 15 and 16 in the medical examination in the thousand dollar policy.

A false statement as to whether applicant has consulted or been attended or treated by a physician is material to the risk and will defeat recovery, especially where it is warranted to be true. *Cobb* v. *Covenant Mut., Etc.*, 153 Mass., 76, 25 Am. St. Rep., 619.

While there are several other representations which fall within this category, the foregoing are sufficient to establish the fraudulent procurement of these policies on material false representations, found in the medical examination, of which the agent of the company is not proven to have had any actual knowledge.

The statute which our legislators have enacted, making the knowledge of the authorized agent the knowledge of the company, is wise and salutary, but when invoked to accomplish a fraud on the company it should be strictly limited within the boundary prescribed, the knowledge of the agent. The statute thus construed safeguards the insured in every legitimate respect and protects the company against material fraudulent representations not known to it or its agent. It should be here noted that we are considering only the "knowledge" clause of the statute.

But it is claimed that the instructions of the agent and his answers, as to the result of outside inquiries, should be held to enlarge the scope of the agent's knowledge by which the company is bound. The instructions are as follows: "The mere filling in of answers is not sufficient unless they are based on an absolute and thorough investigation and inquiry. Do NOT put your signature to statements YOU CANNOT PERSONALLY vouch for. Do not assume anything you are not prepared to become PERSONALLY responsible for. YOU ARE RESPONSIBLE for your report and its consequences."

At the end of the application the agent is requested to give the result of his outside inquiry. In this case the answers were undoubtedly false. We are unable to discern, however, how these instructions and requests can be construed to change the nature or extent of the knowledge of the agent with which the company is charged by the statute. By the statute the company is bound by the agent's knowledge, not by his falsehoods, nor by the falsehoods of the insured to the agent, unless the agent knew them to be false. The company being at the mercy of its agent, these instructions would seem, by fair interpretation, to have been adopted to impress the agent with a sense of fidelity commensurate with the confidence necessarily reposed in him. Accordingly, these instructions were manifestly intended as a precaution to obviate danger from malfeasance, not to encourage and increase it.

We have discussed the case on the assumption that the knowledge of the agent was the knowledge of the company and that the medical

examiner was not an agent, by whose knowledge of the risk the company is bound.   The exceptions, therefore, are not important.   But the motion raises the question of law which we have discussed and upon the application of which we have decided these cases.   We have no hesitancy in declaring that these cases are frauds upon the company.   Yet so far as the knowledge of the agent covers the false representations made by the insured, that knowledge, by force of the statute, binds the company.   But, beyond this, the statute does not in terms or intent permit the fraud to go.   In each medical examination are found material false representations, beyond the knowledge of the agent.   The policies for this reason are void.

*Motion sustained.*