# HURT et al. v. NEW YORK LIFE INS. CO.

## No. 588–N.

District Court, D. Kansas, Second Division.

May 27, 1930.

See, also, 35 F.(2d) 92.

Arnold C. Todd, of Wichita, Kan., for plaintiffs.

Wm. C. Michaels, of Kansas City, Mo., and Richard E. Bird, of Wichita, Kan., for defendant.

POLLOCK, District Judge.

Defendant, on application therefor by one Andrews made, delivered to him a policy of insurance in amount $5,000 payable to his estate. The application for this policy was made by Andrews on April 28, 1924. The policy was delivered by an agent of the company to Andrews on May 6, 1924. The policy contained an incontestable provision, as follows:

"This policy shall be incontestable after two years from its date of issue except for nonpayment of premium and except as to provisions and conditions relating to Disability and Double Indemnity Benefits."

Andrews had theretofore applied, in writing, on April 4, 1924, for a policy of insurance on his life to the same agent of defendant company in amount of $1,000 in which his wife was the beneficiary. This policy was issued, and on the death of the assured was paid by the company to the beneficiary named therein. Hence, for the $5,000 policy thereafter applied for no additional application, in writing, was made, but this policy was based upon the written application made and delivered for the $1,000 policy, and this application is made a part and parcel of the policy involved in this suit. That application contains the following question and answer:

"Q. Have you ever consulted a physician for or suffered from any ailment or disease of the stomach or intestines, liver, kidneys or bladder? A. No."

The application also, among other things, contains the following:

"That the insurance hereby applied for shall not take effect unless and until the policy is delivered and received by the applicant and the first premium thereon paid in full during his lifetime and then only if the applicant has not consulted or been treated by any physician since his medical examination."

On May 6, 1924, the policy was delivered, and at that time the first premium was paid by Andrews to the agent of the company from money borrowed by Andrews from the plaintiffs in this suit, for whom he was working at the time, and to whom he owed the further sum of $1,500. On receiving the policy Andrews immediately by assignment transferred the policy absolutely to plaintiffs in satisfaction of his indebtedness to them. This assignment was forwarded to and approved by the company.

During the contestable period and after the death of Andrews, which occurred on the 29th day of June, 1924, the defendant company brought this suit to cancel the policy on the ground of fraud practiced in procuring it by Anderson. While the plaintiffs did bring their action at law to recover on the policy before the expiration of the period within which it was open to contest, the defendant company did not answer in that action until after the contest period had expired. The ground of contest of the policy

for fraud practiced as relied upon in this suit in equity now before the court consists in the fact, in the medical examination on which it was based, the applicant was asked the question, "Have you ever consulted a physician or suffered from any ailment or disease of the stomach or intestines, liver, kidneys or bladder," to which he answered, "No"; and also upon the fact, after the making of this application on which the policy was based, and before delivery of the policy to him, he violated that provision of the contract by consulting a physician for very serious trouble. That the question above stated was answered by the plaintiff in the negative, when the truth required it should have been answered in the affirmative, and that he did consult a physician and was treated for very serious disease of the bladder, is unquestioned in this record. Now while the plaintiffs concede the assured did in violation of the provision of the contract above stated consult physicians after his medical examination as stated in the application and before the receipt of the policy, yet they say as the statute of this state makes the truth or falsity of his answers in his medical examination, and the consultation of physician before receiving the policy, immaterial in this case for the reason that his death was not attributable to the disease for which he consulted the physicians, or to the truth or falsity of the question as stated and above answered, for that the death of the assured was caused by a blood clot on the brain, a wholly independent cause. Now, such is the issue in this suit.

The statute of this state (Rev. St. 1923, 40—330) relied upon by plaintiffs in this defense reads as follows:

"No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this state, shall be deemed material or render the policy void unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable."

This statute, it would appear from its wording to have been adopted from a very like statute of the state of Missouri, which statute has been held inapplicable to cancel a policy of insurance such as is this case. See Mutual Life Insurance Co. v. Lambert (D. C.) 34 F.(2d) 215; New York Life Ins. Co. v. Cobb, 219 Mo. App. 609, 282 S. W. 494.

This suit in equity is brought to cancel a contract procured as averred by the insurance company by fraud and misrepresentation in part, and, further, on the ground that the terms of the contract itself were violated when the policy was delivered, and therefore it did not become effectual as a binding assumption of the risk by the company. In considering this matter it must be borne in mind the Supreme Court in the recent case of Stipcich v. Insurance Co., 277 U. S. 316, 48 S. Ct. 512, 72 L. Ed. 895, Mr. Justice Stone delivering the opinion for the court, held:

"Insurance policies are traditionally contracts uberrimæ fidei and a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option. Carter v. Boehm, 3 Burrows, 1905; Livingston v. Maryland Insurance Co., 6 Cranch, 274, 3 L. Ed. 222; McLanahan v. Universal Insurance Co., 1 Pet. 170, 7 L. Ed. 98; Phœnix Life Insurance Co. v. Raddin, 120 U. S. 183, 189, 7 S. Ct. 500, 30 L. Ed. 644; Hardman v. Firemen's Insurance Co. (C. C.) 20 F. 594."

Now, the question here presented is quite apart from any question of the life or death of the assured. This suit could have been instituted and maintained at any time after the delivery of the policy before the incontestable bar written therein had fallen, and the suit relates solely and alone to the moment the contract was completed by the delivery of the policy. The contract is one of indemnity against the hazard of the death of the assured happening from any cause. The company before assuming the risk had the right to ask any pertinent question affecting the risk assumed, and, further, had the absolute right to a fair and truthful answer to any such question asked. Indeed, the company had the right to a full and fair disclosure of any and all facts from the assured concerning the state of his health or any impairment of the same affecting the risk it was assuming under the contract, known to the assured, whether inquired of or not. Good faith and fair dealing required this. The company had the further right to require, before the contract was completed and the risk assumed by delivery of the policy, if assured had consulted any physician and to decline to enter into the contract in the event the assured had consulted a physician for any impairment of his health of such a nature as would, in the judgment of the insured, require such consultation or treatment for the same after the application and medical examination therein on which

the policy was based and before the risk was assumed by delivery of the policy. All of these matters pertain alone to the date the policy was delivered and the contract of assumption of the risk was thus completed. And this for the reason it was then not only unknown but unknowable when the assured would die or by what cause or from what disease. In such case, if answers materially affecting the risk assumed were untrue, or if the policy was delivered in violation of a condition therein imposed, it would not be binding if delivered and the death was caused by an entirely independent happening, such as a stroke by lightning or accidental drowning. The showing of such independent cause of death would not affect the merits of the suit for cancellation or the decree entered therein. The contract was either valid or invalid when formed. Nothing thereafter occurring, such as the cause of the subsequent death of the assured, could affect the determination of that question.

It follows, as the contract in this case was attempted to be concluded in violation of the provision contained therein, as above stated, and as the assured well knew this fact, also, as the question above quoted was answered in the negative when the assured knew the truth required an affirmative answer, it follows, the defense of the state statute is not here material to the issue now presented for decision. The infirmity or disease from which the applicant suffered and was treated as inquired of in the question above stated, and as occurred after the medical examination and before the delivery of the policy, was a very serious disease, and as there is no question about the untruthfulness of the answer made in the medical examination, as above stated, and as there is no question raised but that the assured did for a serious trouble consult physicians between the date of the application and medical examination and the delivery of the policy, by the very terms of the contract the policy never did become effective by the company assuming the risk. All these matters were well known to the assured.

It follows, the defense to this suit in equity of immateriality under the statute of the state is not material to the issue now presented to the court for decision. That this suit in equity to cancel the policy should be first presented to and determined by the court notwithstanding the pendency of the law action on the policy has been conclusively settled by the Court of Appeals for this circuit, and, further, that the breach of the provision contained in the policy as to the consultation of a physician between the date of the medical examination as found in the application and the delivery of the policy, and the false answer to the pertinent and material question propounded to the assured and falsely answered, are grounds for the cancellation of the policy, is well stated by the Court of Appeals for this circuit in New York Life Ins. Co. v. Griffith, 35 F.(2d) 945. It is there held:

"Suit for cancellation of life and disability insurance policy was properly tried as an equity suit, on issues made by bill and answer, before demands at law under crosspetition were heard.

"Breach of provision in application for insurance to effect that insurance was to be effective only if applicant had not consulted or been treated by any physician since his medical examination constitutes a valid defense to liability on the policy.

"False representations made by insured in application for life and disability insurance constitute a valid defense to liability of insurer on policy."

Many authorities in support of the view of the case here taken may be cited, but the conclusion reached so comports with reason that a lengthy citation of authorities is deemed unnecessary.

It follows, the amount of the premium paid as tendered by the company shall be paid to the plaintiffs and the decree entered canceling the policy in this equity suit, which conclusion, of necessity, ends the action at law instituted by plaintiffs.

It is so ordered.