BESSIE A. SAKALLARIS

*vs.*

NEW YORK LIFE INSURANCE COMPANY.

Cumberland.      Opinion, November 4, 1935.

*Woodman, Skelton, Thompson & Chapman,* for plaintiff.
*Verrill, Hale, Booth & Ives,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

HUDSON, J. The plaintiff as beneficiary brings this action of assumpsit on a life insurance policy dated December 4, 1933, issued by the defendant to her deceased husband.

The defense is misrepresentation of material facts in his application for the policy.

Reported for decision on so much of the evidence as is legally admissible, the record warrants the finding of these facts: The insured, fifty-five years old at the time of his death on January 13, 1935, born in Greece, came to America in 1900, worked in a "tannery shop" in Massachusetts for a few years, then in a "bakery shop," again in a tannery, and in 1909 or 1910 returned to Greece for a year, after which he returned to Massachusetts. In 1918 he came to Portland, where until his death he conducted a fruit business.

As a boy he went to school three or four years in Greece but did not study English. Greek mostly was spoken in his home, his wife being able to speak only a little English, although his children were educated here and speak our language. While working in the tannery and "baker shop" in Massachusetts, he associated principally with Greeks who spoke broken English. Ever after coming to Portland, however, he dealt with Americans and learned the language sufficiently to carry on his business, practically wholly in English. He never learned to read and write English to any extent but could make out headlines in American newspapers. He had a sufficient knowledge of our language so that at different times he was used as an interpreter by an American doctor in treating Greek patients. In that capacity he translated from the Greek to English the symptoms of the patient and from the English to the Greek the treatment prescribed by the physician. Qualifying therefor as to

knowledge of the English language, by naturalization he became an American citizen.

On November 24, 1933, at the solicitation of the defendant's agent, the insured applied for his policy and answered as follows the questioning of the examining physician:

"Q. Have you ever raised or spat blood?

"A. No.

"Q. Have you ever consulted a physician or practitioner for or suffered from any ailment or disease of . . . the heart, blood vessels or lungs?

"A. No.

"Q. Have you ever consulted a physician or practitioner for any ailment or disease not included in your above answers?

"A. No.

"Q. What physicians or practitioners, if any, not named above, have you consulted or been examined or treated by within the past five years?

"A. None."

He signed this statement:

"On behalf of myself and of every person who shall have or claim any interest in any insurance made hereunder, I declare that I have carefully read each and all of the above answers, that they are each written as made by me, and that each of them is full, complete and true, and agree that the Company believing them to be true shall rely and act upon them."

Unknown by the defendant or its agent at the time of the issue of the policy, it appears that the insured was taken sick in January preceding the date of his application and was treated by a Portland physician for heart trouble. The doctor found him in bed, short of breath, spitting blood, with low blood pressure and complaining of pain in hip, left shoulder and back of neck. The diagnosis was coronary occlusion. Digitalis was prescribed and taken. The patient remained in bed over two weeks and was subsequently treated by this doctor in February, March, April and May and at one later visit. The physician testified that he informed the insured two or three different times that the trouble was with his heart and

that the medicine taken must be supplemented with complete rest. The attending physician stated that his patient always talked with him in the English language, had no difficulty in conversing, understood the language and expressed himself "very well" in English.

In approximately fourteen months after the application, the insured died with "acute dilation of the heart with pulmonary edema."

Counsel agree that the answers are representations and do not constitute warranties; but false and untrue representations of fact which are material to the risk void the policy.

> "The answers of an applicant for life insurance, as to his present and past condition of health, are unquestionably material to the insurance risk proposed. The policy, if issued at all, will be issued on the faith that they are true. These answers afford in part the test by which it is determined whether to issue a policy at all or not. Hence it follows that such answers are material and must be true." *Jeffry, Excr.* v. *The United Order of the Golden Cross*, 97 Me., 176, 179.

> "A false statement as to whether applicant has consulted or been attended or treated by a physician is material to the risk and will defeat recovery, especially where it is warranted to be true." *Hughes, Admrs.* v. *Metropolitan Life Insurance Company*, 117 Me., 244, 249.

When the applicant for this policy denied that he had "raised or spat blood," had "consulted a physician or practitioner for or suffered from any ailment or disease of the heart," that within the past five years had "consulted with or been treated by a physician," he stated facts material to the risk which were false and untrue and by so doing made recovery in this case by his beneficiary impossible as a matter of law.

A careful examination of the evidence convinces us not only that his denials were false and untrue but that he knew them so to be. His knowledge of English permitted him to understand the questions read to him, as well as, understandingly, to carry on the conversation with the examining physician.

Our finding on this issue of fact as to his understanding of the

questions makes it unnecessary to decide the issue of law raised by the plaintiff's counsel as to whether or not plaintiff could recover if, not understanding the questions, he made untrue statements of fact material to the risk. As yet that has not been passed upon in this State. We leave it for decision in some case where it would not be purely *obiter dictum.*

*Judgment for defendant.*