**MALLOY et al. v. NEW YORK LIFE INS. CO.**

No. 3388.

Circuit Court of Appeals, First Circuit.

April 11, 1939.

Crawford D. Hening, of Berlin, N. H., and Laurence I. Duncan, of Concord, N. H. (Robert W. Upton, of Concord, N. H., on the brief), for appellants.

Jonathan Piper, of Concord, N. H. (Demond, Sulloway, Piper & Jones, of Concord, N. H., on the brief), for appellee.

Before BINGHAM, and WILSON, Circuit Judges, and FORD, District Judge.

FORD, District Judge.

This is an appeal from a decree of the District Court of New Hampshire in an equity suit brought by the New York Life Insurance Company, hereinafter called the "Insurance Company" against Edward T. Malloy, hereinafter called the "insured", and Thomas E. Malloy, of Gorham, New Hampshire (the latter now being deceased and his estate having no interest in these proceedings), seeking to rescind and cancel the double indemnity and disability provisions of four policies of insurance issued March 12, 1929 to Edward T. Malloy, insuring his life and payable in case of death to Thomas E. Malloy, the father of the insured. All the policies are of the same tenor and effect. Rescission is sought on the ground of fraud and misrepresentation by the insured in his applications for the policies. The bill seeks, in addition, injunctive relief against any action by the insured to enforce the aforesaid provisions. Other provisions of the policies have become incontestable because of the lapse of time.

Separate premiums were paid for the double indemnity and disability benefits, and policies such as these are regarded as containing distinct contracts effecting different objects though contained in one instrument. Pyramid Life Ins. Co. v. Selkirk, 5 Cir., 80 F.2d 553; Penn Mutual Life Ins. Co. v. Hartle, 165 Md. 120, 166 A. 614, 91 A.L.R. 1466; Kaffanges v. New York Life Ins. Co., 1 Cir., 59 F.2d 475; New York Life Ins. Co. v. Davis et al., D. C., 5 F.Supp. 316, 319.

The insured in his answer denies that he had concealed any material facts or that he had made any false or fraudulent statements upon which the Insurance Company relied in issuing the policies and he further filed a motion to dismiss based upon the ground that the Insurance Company was precluded by the incontestability clause contained in the policies (see infra) from rescinding the double indemnity and disability provisions by reason of the fact that more than two years had elapsed between the date of issuance of the policies and the filing of this bill of complaint.

The written application for the policies contained the following questions and answers:

"Q. 8. Have you ever consulted a physician or practitioner for or suffered from any ailment or disease of * * * B. The heart, blood vessels, or lungs? A. No.

"Q. 10. Have you ever consulted a physician or practitioner for any ailment or disease not included in your above answers? A. No.

"Q. 11. What physicians or practitioners, if any, not named above, have you consulted or been examined or treated by within the past five years? * * * A. None."

The application also contained the following provision which was signed by the insured:

"On behalf of myself and of every person who shall have or claim any interest in any insurance made hereunder, I declare that I have carefully read each and all of the above answers, that they are each written as made by me, and that each of them is full, complete and true, and agree that the Company believing them to be true shall rely and act upon them."

It appeared from the testimony in the court below that the policies in suit were contracted for and delivered to the insured at Orono, Maine, on March 12, 1929, by an agent of the Insurance Company while the insured was a student at the University of Maine. He was then twenty-six years of age.

In the fall of 1920 the insured was a student at St. John's Preparatory School at Danvers, Massachusetts, and was suffering from a cold which he had contracted on a trip up Mt. Washington, and consulted one Dr. Edward R. McGee, of Berlin, New Hampshire, about September 1, 1920 who informed him that he had bronchial trouble, bronchitis, or "something like that". He made one visit to this doctor, and in November of the same year he was taken,

by his father, to a tuberculosis clinic conducted by a Dr. John M. Wise in Berlin, New Hampshire. The insured, Edward T. Malloy, at that time did not know it was a tuberculosis clinic and understood from his father that Dr. McGee had advised the visit. The records of that clinic disclose that the insured had a "severe cough" occasionally for the past three years; that the present illness began in 1917 and his complaint was of a "cough" and "greenish sputum" and a diagnosis was made of "incipient tuberculosis, arrested". The date of this examination was November 9, 1920. The record showed another visit on February 22, 1921, the second and last, when the insured's condition was "improved, no rales". The nurse's card showed a visit to the home of the insured on February 10, 1921, and at subsequent visits in April and May, the insured's condition was improved.

In the fall of 1921 the insured attended the high school in Gorham, New Hampshire, and continued there until the summer of 1923 when he graduated. He did not attend during the school year of 1920. During his stay at high school he played on the school football teams in the fall of 1918, 1919, 1921, and 1922. In the fall of 1923 he entered the University of Maine. At this college physical examinations for military training were required and he successfully passed these for the years 1923 to 1928, inclusive.

In the fall of 1928 following an application to be excused from military training he was referred for examination to a Dr. Allen Woodcock, a physician in Bangor, Maine, not connected with the University, who examined him on September 21, 1927 on the insured's complaint that he had been kicked in the shin while playing football four years before and this, because of a subsequent injury, was causing him considerable trouble, and he desired a certificate in order that he might be allowed to omit his military training. The certificate was granted, but later revoked because of his athletic activities. The insured was again examined by Dr. Woodcock on September 18, 1928 for the same purpose and again a certificate was granted. No complete physical examination of the insured was made by Dr. Woodcock at this time nor was he treated for anything. The insured testified in the court below that he had not forgotten these visits to Dr. Woodcock in 1927 and 1928 but he did not mention them because he thought they were included in his military examinations which he had disclosed to the agent who wrote the insurance, and he told him that this was of no consequence. The examining physician for the Insurance Company testified that he wrote in the word "no" because this was his custom when he knew the applicants were taking military training and had a regular army examination.

On February 11, 1928, Dr. Thomas J. Burrage of Portland, Maine, had an appointment with the father of the insured, Thomas E. Malloy, for the latter's usual physical examination. The insured met his father in Portland, Maine, for the purpose of talking to him about leaving college. The father and son both went to Dr. Burrage's office at his father's suggestion, and after the completion of the father's examination, the latter requested the doctor to make a complete physical examination of his son and the father stated to the physician that the son had or was said to have had pulmonary tuberculosis, which had never been disclosed to the insured, and he asked the doctor to say nothing about it to his son. The examination by Dr. Burrage lasted from 1¼ to 1½ hours, and the only complaint made by the boy was that he was feeling tired after his mid-year examinations. The insured at this time was twenty-five years of age. Dr. Burrage's records showed that there was in the lungs a "slight dullness with bronchial breathing but no rales, at right apex above clavicle in front and scapula behind". Dr. Burrage made a diagnosis of (1) "healed pulmonary tuberculosis right upper lobe", which was not affecting the general system, (2) poor liver function, and (3) septic tonsils. There was no talk with Edward about pulmonary tuberculosis and for this no treatment was necessary or prescribed. The physician prescribed the removal of tonsils. Dr. Burrage thought that the insured's condition was excellent.

The insured testified that he did not know at the time of the signing of the application for insurance that he had any disease of the lungs and did not know of Dr. Wise's diagnosis until the spring of 1935 when he went to visit a Dr. Bolk, in Boston, about his present illness (epilepsy), when his father told him about it; that he was told after the clinic visit that he was in a run-down condition, and he further testified that he saw no nurse at his house and did not recall visiting the clinic in February, 1921. In reference to the visit to

Dr. Burrage, he testified that Dr. Burrage had been his father's doctor for years and he had completely forgotten about this examination when he signed the application.

Dr. Edward J. Campbell of New York City, Chief Medical Examiner for the New York Life Insurance Company, testified that acting in accordance with the practice and custom of life insurance companies, if he had known the applicant had been examined at a tuberculosis clinic and incipient pulmonary tuberculosis found, and if he had known Dr. Burrage had found healed symptoms of the disease, septic tonsils and functional liver disorder, the insurance policies in question would not have been issued without further investigation, and if the investigation disclosed the medical history as found, the applications would have been declined. The lower court found this to be a fact. The District Judge found on the above testimony that although the insured was kept in ignorance of the fact that he had had incipient pulmonary tuberculosis, the facts relating to the examination of his chest at the clinic and by Dr. Burrage were such that they must have been within his memory and should have been disclosed. He further found that the insured was not guilty of any fraud or misrepresentation in not disclosing the names of the medical examiners for military training in connection with the college course, as he relied on Dr. Bayard, the examiner for the Insurance Company, to make the proper answers to question No. 11 in reference to these examinations; that the failure of the applicant to disclose the examination by Dr. Woodcock was entirely inconsequential.

The court further found and ruled that the insured's failure to mention in his application that he had been examined by Dr. Burrage was intentional and a concealment of a material fact; that the failure to disclose his state of health at the time of this examination materially increased the risk in that it was information that the Insurance Company was entitled to have in determining whether or not to accept the risk, and further there was design on the part of the insured to defraud the Insurance Company and that for this the provisions of the total and permanent disability benefits of the policies were voidable at the option of the Insurance Company. The insured's motion to dismiss was denied and a decree was issued cancelling and declaring null and void the double indemnity and disability provisions and conditions of the policies and enjoining the insured from asserting any claim thereunder.

The policies in question having been negotiated and delivered in the State of Maine, we have recourse to the laws of that State in determining the respective rights of the parties in the controversy here involved. Rosenthal v. New York Life Ins. Co., 304 U.S. 263, 264, 58 S.Ct. 874, 82 L.Ed. 1330; Ruhlin et al. v. New York Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290; Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487; Mutual Life Ins. Co. of New York v. Johnson, Adm'r, 293 U.S. 335, 55 S.Ct. 154, 79 L.Ed. 398.

The insured relies upon two main assignments of error, the second of which we shall take up first. In this assignment the insured maintains that the findings and rulings that the insured falsely and fraudulently concealed and misrepresented material facts in his application for the policies were clearly wrong.

While it is true that on an appeal in equity a case is to be examined on both the law and the facts, and that the reviewing court is not bound by the trial judge's findings of fact, it is equally true that the appellate court ought not to disturb such findings, especially where the evidence is conflicting and the credibility of witnesses is involved, unless it appears that the trial judge was clearly wrong. Hughes Federal Practice, Sections 5639, 5425; La Abra Silver Mining Co. v. United States, 175 U.S. 423, 20 S.Ct. 168, 44 L.Ed. 223; Rosenthal et al. v. New York Life Ins. Co., 8 Cir., 99 F.2d 578, 582; Colby v. Riggs Nat. Bank, 67 App.D.C. 259, 92 F.2d 183, 199, 114 A.L.R. 1065; Illinois Watch Case Co. et al. v. Hingeco Mfg. Co., Inc., et al., 1 Cir., 81 F.2d 41; New York Life Ins. Co. v. Simons et al., 1 Cir., 60 F.2d 30; American Rotary Valve Co. v. Moorhead, 7 Cir., 226 F. 202; Cf. Rule 52(a) New Federal Rules of Civil Procedure for the District Courts, 28 U.S.C.A. following section 723c.

And where the credibility of witnesses is a determinative factor in arriving at findings of fact, as was the case here, the reviewing court will not usually upset those findings made by the judge who has had the opportunity of seeing and hearing the wit-

nesses testify. Moore v. Ford Motor Co., 2 Cir., 43 F.2d 685; Fuller et al. v. Reed et al., 1 Cir., 249 F. 158.

In the instant case, after a complete review of the evidence, we cannot find any warrant for reaching a conclusion that the lower court was wrong in its findings of fact.

Nor was the court in error in its conclusions of law that the policies were voidable at the option of the Insurance Company, in view of its findings of facts, unless that question is concluded by the two-year incontestible clause.

The principles laid down in the case of Sakallaris v. New York Life Insurance Company, 134 Me. 91, 181 A. 669, appear to be decisive of the questions here involved. In that case an action was brought to recover on a life insurance policy issued by an insurance company which defended on the ground that the policy was voided by misrepresentations of the insured in his application. The form of application was practically similar to the one in the instant case and contained an agreement signed by the insured that the company if it believed the answers to be true "shall rely and act upon them". The insured's answer was "none" to the question as to what physicians or practitioners he had consulted or been examined or treated by during the past five years, whereas as a matter of fact the evidence showed within a very short time prior to the date of the application he had been treated by a physician for heart trouble and that the doctor had found him in bed spitting blood with a low blood pressure and that a diagnosis was made by the physician of "coronary occlusion". The court said, (134 Me. pages 94, 95, 181 A. page 670):

"When the applicant for this policy denied that he had 'raised or spat blood,' had 'consulted a physician or practitioner for or suffered from any ailment or disease of the heart,' that within the past five years had 'consulted with or been treated by a physician,' he stated facts material to the risk which were false and untrue and by so doing made recovery * * * impossible as a matter of law."

The court further found in this case that not only were the denials "false and untrue" but "he knew them so to be". And it said, "Our finding on this issue of fact as to his understanding of the questions makes it unnecessary to decide the issue of law raised by the plaintiff's counsel as to whether or not plaintiff could recover if, not understanding the questions, he made untrue statements of fact material to the risk. As yet, that has not been passed upon in this state." Hughes Admr's v. Metropolitan Life Ins. Co., 117 Me. 244, 103 A. 465; Berman v. Fraternities Health & Accident Association, 107 Me. 368, 78 A. 462; Jeffrey, Ex'r., v. United Order of the Golden Cross, 97 Me. 176, 53 A. 1102.

In the instant case, the lower court made similar findings, viz., that the omission to inform the Insurance Company of Dr. Burrage was intentional; that it constituted concealment of a material fact; and that it was done with an intention to deceive. In view of the latter finding it is unnecessary to consider the contention of the Insurance Company that proof of actual fraud is unnecessary to warrant voidability if the representations that are made are false, untrue, and material to the risk.

The Sakallaris case, supra, is in agreement with the general law that questions and answers in the application for insurance as to prior medical treatment are material and affect the risk.

The court in New York Life Insurance Company v. Simons, supra, said [60 F.2d 34]: "A representation in an application is material in the determination by an insurance company of the desirability of a risk, if in the course of the general experience of insurance companies it may affect the risk, * * *." Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895; Mutual Life Ins. Co. of New York v. Hilton-Green, 241 U.S. 613, 36 S.Ct. 676, 60 L.Ed. 1202; Jeffries, Adm'r v. Economical Mutual Life Ins. Co., 22 Wall. 47, 22 L.Ed. 833; Ginsburg v. Pacific Mutual Life Ins. Co., 2 Cir., 89 F. 2d 158, 159; Dudgeon v. Mutual Benefit Health & Accident Ass'n, 4 Cir., 70 F.2d 49, 51; Nonatum Inv. Co. v. Maryland Casualty Co., 1 Cir., 56 F.2d 329, 335; Mutual Life Ins. Co. of New York v. Hurni Packing Co., 8 Cir., 260 F. 641, 645.

And further if the representations are false and made with an intention to deceive, the provisions of the policy concerning double indemnity and disability benefits are voidable at the option of the insurer. New York Life Ins. Co. v. Simons, supra; New York Life Ins. Co. v. Webber et al., 1 Cir., 60 F.2d 22; Kaffanges v. New York Life Ins. Co., supra; Nonatum Inv. Co. v. Maryland Casualty Co., supra.

■ The fact that there was no causal connection between the facts fraudulently misrepresented and the present illness (epilepsy) of the insured upon which the claim for disability benefits was based is of no consequence. Ginsburg v. Pacific Mut. Life Ins. Co. of California, supra; Jefferson Standard Life Ins. Co. v. Clemmer, 4 Cir., 79 F.2d 724, 103 A.L.R. 171; New York Life Ins. Co. v. Webber, supra; Hurt et al. v. New York Life Ins. Co., D. C., 41 F.2d 392, 394.

The other main assignment of error upon which the insured relies in his appeal is that the ruling upon his motion to dismiss, that the double indemnity and disability provisions of the policies are contestable for misrepresentation and fraud in the procurement of the policies, is clearly wrong. Each of the policies in suit contained the following clause:

"Incontestability.—This Policy shall be incontestable after two years from its date of issue except for non-payment of premium and except as to provisions and conditions relating to Disability and Double Indemnity Benefits."

Chapter 60, Section 147 of the Revised Statutes of Maine provides as follows:

"*Life insurance policies incontestable after two years; exceptions.* 1923, c. 164. The policy of life insurance together with the application and the medical examination therefor, a copy or photograph of which application without the medical examination shall be endorsed upon or attached to the policy and made a part thereof, shall constitute the entire contract between the parties and shall be incontestable after it shall have been in force during the lifetime of the insured for two years from its date, except for non-payment of premiums * * * and at the option of the company provisions relative to benefits in the event of total and permanent disability and provisions which grant additional insurance specifically against death by accident may also be excepted."

■ It is the contention of the insured that, under the authority granted by this statute to except from the incontestability clause provisions of the policy relating to double indemnity and disability benefits, the Insurance Company has not clearly and plainly done so, and we think the insured is correct in his contention.

The Supreme Court of the State of Maine has not as yet passed directly upon this question and this court will exercise an independent judgment in determining the law with respect to the issues here presented, based upon whatever principles of state law are applicable. Rosenthal v. New York Life Ins. Co., supra; New York Life Ins. Co. v. Jackson, 304 U.S. 261, 262, 58 S.Ct. 871, 82 L.Ed. 1329; Burns Mortgage Co. v. Fried, 292 U.S. 487, 496, 54 S. Ct. 813, 78 L.Ed. 1380; Burgess v. Seligman, 107 U.S. 20, 2 S.Ct. 10, 27 L.Ed. 359; New York Life Ins. Co. v. Jackson et al., 7 Cir., 98 F.2d 950.

■ It is the law of Maine, as it is generally, that if the language of an insurance policy is ambiguous, or susceptible of interpretations different in import, construction should be most strongly against the insurer, on whom the obligation of contract rests, and who is supposed to have chosen the wording. "No rule * * * is more fully established, or more imperative and controlling * * *." Barnes v. Dirigo Mutual Fire Ins. Co., 122 Me. 486, 120 A. 675, 676; Dunning v. Massachusetts Mut. Acc. Ass'n, 99 Me. 390, 59 A. 535; Young v. Travelers' Ins. Co., 80 Me. 244, 13 A. 896; Abbott v. Hampden Ins. Co., 30 Me. 414.

As the court said in Mutual Life Insurance Company of New York v. Hurni Packing Company, 263 U.S. 167, 174, 44 S. Ct. 90, 91, 68 L.Ed. 235, 31 A.L.R. 102: "The rule is settled that in case of ambiguity that construction of the policy will be adopted which is most favorable to the insured. The language employed is that of the company and it is consistent with both reason and justice that any fair doubt as to the meaning of its own words should be resolved against it." Strochmann et al. v. Mutual Life Insurance Company of New York, 300 U.S. 435, 57 S.Ct. 607, 81 L.Ed. 732.

Webster's New International Dictionary defines "ambiguity" as "doubtfulness or uncertainty, especially in the meaning of language arising from its admitting of *more than one meaning.*" (Italics supplied.) Ballentine Law Dictionary (p. 73).

■ Was the incontestability clause in these policies, in accordance with these principles, fairly and reasonably susceptible of interpretations different in import, or of more than one meaning? It is well settled that these beneficent clauses are included in the policies to affect their saleability and the test to be applied by the

court in construing them is, what would the reasonably prudent person applying for insurance of this type understand the clause to mean, not what they would mean to a lexicographer or a grammarian? Nor is the test what the insurance company intended the words to mean. As was quoted by Judge Woodbury from the case of Watson v. Firemen's Insurance Company, 83 N. H. 200, 140 A. 169, speaking for the court in the case of Duhaime v. Prudential Insurance Company of America, 86 N.H. 307, 308, 167 A. 269: "'The test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would have understood them to mean.'" McGinley v. John Hancock Mut. Life Ins. Co., 88 N.H. 108, 109, 184 A. 593.

It is to be observed that the clause of the policies here in question does not, in accordance with the terms of the Maine statute, merely except "provisions" relative to the benefits described, but excepts "as to provisions and conditions relating to disability and double indemnity benefits", thereby constricting its scope.

Also, the policy on its face provides for the payment of double the face of the policy "if such death resulted from accident as defined under 'double indemnity' and subject to the *provisions therein* set forth". (Italics supplied.) This is a direct reference to the provisions contained in the section of the policy entitled "Double Indemnity" and set off by itself on page 2. There is a further reference on page 1 of the policy to the "benefits and provisions * * * on the following pages". And on turning to the double indemnity and disability sections of the policy on page 2, there appear therein provisions and conditions relating to these benefits. Also both of these benefits are referred to in each of these sections as "this provision". There is no reference to the application in the reservation as to contestability, nor do the double indemnity and disability provisions contain anything relative to fraud in obtaining the policy or the effect of false statements in the application. Stroehmann . v. Mutual Life Insurance Company of New York, supra, 300 U.S. page 438, 57 S.Ct. 607, 81 L. Ed. 732.

The average person would be justified in inferring that the words "provisions and conditions" in the clause are used synonymously, and it would not be an unnatural inference for him to suppose that the incontestability clause excepted the right to contest the liability in accordance with the provisions and conditions which are specified under the headings "Double Indemnity and Total and Permanent Disability" where all the "conditions" are contained. Inasmuch as the Insurance Company has confined itself to this detailed use of language, it must be bound by a reasonable interpretation of it.

In the case of Ness v. Mutual Life Insurance Company of New York, 4 Cir., 70 F.2d 59, the court in construing the following incontestable clause in a policy of insurance: "Except for non-payment of premiums and except for the restrictions and provisions applying to the Double Indemnity and Disability Benefits as provided in Sections 1 and 3 respectively, this Policy shall be incontestable * * *" (Section 1 referring to the circumstances and conditions under which Double Indemnity should become payable and Section 3 to Disability benefits), decided that the effect of the excepting phrase was not effective to render the incontestable clause inapplicable to disability benefits, but was merely to preserve the rights of the company under the restrictions and provisions specifically set forth in Sections 1 and 3. That there was no ambiguity in the language used.

And the court further stated (page 60):

"The purpose of the second exception in the incontestability clause was to make clear that, notwithstanding the provisions of that clause, the company reserved the right to rely upon the restrictions and provisions contained in sections 1 and 3. Thus the right was reserved to contest, under section 1, liability for double indemnity in case of suicide or death resulting from military or naval service or from engaging in felony. And the right was reserved to contest, under section 3, claims for disability where due proofs had not been furnished, or where upon request of the company proofs of the continuance of the disability had been refused, or where the disability resulted from self-inflicted injury or from military or naval service beyond the continental limits of the United States and Canada. * * * It was evidently to guard against a construction of the policy holding that the defenses reserved in sections 1 and 3 were precluded by the incontestability clause, that the second exception in that clause was inserted.

"If it had been the intention of the company that the right to contest liability for double indemnity or disability benefits should not be affected by the incontestability clause, it would have been easy enough to use language making that intention clear, as by simply wording the second exception .to the incontestability clause to read: 'Except as to liability for double indemnity or disability benefits.' If there were any ambiguity in the language used, it is well settled that it should be resolved in favor of the insured. \* \* \* It is to be noted that the exception is, not as to the double indemnity and disability benefits, but as to 'restrictions and provisions applying to the double indemnity and disability benefits.' "

The Insurance Company relies to support its contention that the clause involved no ambiguity and should be sustained to allow the Insurance Company to contest the validity of its double indemnity and total disability provisions for fraud at the inception of the contract upon the case of Equitable Life Assurance Soc. of U. S. v. Deem, 4 Cir., 91 F.2d 569, 571, which arose in the same circuit as the Ness case, supra. However, the language of the policy involved in that case and of the incontestability clause therein was very different from the language of the clause in this case. The incontestability clause in that case was as follows: "This policy, except as to the provisions relating to Disability and Double Indemnity, shall be (a) Incontestable \* \* \*." The court in this case easily justified its position in the Ness case, supra, in the following language (pages 573, 574): "The wording of the exception [Ness case] was however quite different from that in the instant case. \* \* \* On comparison the differences are obvious. In the Ness Case the word 'provisions' by the context was at least susceptible of a meaning synonymous with 'restrictions' or 'conditions'; the exception was grammatically applicable to the word incontestable (rather than to the 'policy'), and the scope of the phrase was further limited specifically to certain portions of the policy, and not made applicable to the whole. And Judge Parker, for the Court, clearly points out the distinction in the opinion. 'It is to be noted that the exception is, not as ·to the double indemnity and disability benefits, but as to "restrictions and provisions applying to the double indemnity and disability benefits." ' "

This language and reasoning is applicable to the wording of the incontestability clause in the present suit, and in accord with the conclusion reached here.

Judge Denman in construing the precise incontestability clause contained in the policies in suit in a well-reasoned opinion in the case of New York Life Insurance Company v. Kaufman et al., 9 Cir., 78 F.2d 398, reached the same result arrived at by us in the instant case. Speaking for the court which held the clause ambiguous, he stated (page 403):

"One does not draw a provision to contest such conditions in a contract by a fraud defeating the whole instrument. It is more rational to suppose that the contestability which the excepting phrase saves is as to the satisfaction of the conditional requirements, even if prior decisions of the courts had held such precaution unnecessary.

"It thus appears ambiguous whether the unnecessarily plural particularizing exception as to provisions and conditions relating to the disability benefits refers to the blocked off group of provisions and conditions or to the insurance as a whole. This ambiguity must be resolved against the company and the contests reserved by the excepting phrase held to be confined to this enclosed group."

A similar conclusion to this was reached in the cases of New York Life Insurance Company v. Truesdale, 4 Cir., 79 F.2d 481; New York Life Insurance Company v. Yerys et al., 4 Cir., 80 F.2d 264, where the court saw no material difference in the incontestability clause in the policies in suit from that contained in the policy considered in Ness v. Mutual Life Insurance Company of New York, supra; Horwitz et ux. v. New York Life Insurance Company, 9 Cir., 80 F.2d 295; Thompson v. New York Life Insurance Company, D. C., 9 F.Supp. 248.

Judge Branch in the case of Penn Mutual Life Insurance Company v. Kelley, 88 N.H. 351, 355, 189 A. 345, 346, in determining the meaning of an "except" clause which read, " \* \* \* Except as to any provision relating to disability benefits" construed it to read, "Except as to any provisions relating to disability benefits which furnish grounds for defense." And further stated: "All other defenses not based upon 'any provisions relating to disability benefits' are barred by the incontestability

448

clause of the policy * * *." Cf. Pyramid Life Ins. Co. v. Selkirk, 5 Cir., 80 F. 2d 553, contra.

Kaffanges v. New York Life Insurance Company, supra, decided in this circuit and cited by counsel for the Insurance Company in his brief, is no authority for the position the Insurance Company takes in this case, inasmuch as the question in issue here was not raised therein.

Mr. Justice McReynolds in Stroehmann v. Mutual Life Insurance Company of New York, supra (300 U.S. pages 439, 440, 57 S. Ct. page 609, 81 L.Ed. 732), where the court was construing an incontestability clause similar to that in the Ness case, supra, stated that: "Examination of the words relied upon to show an exception to the incontestability clause of the policy discloses ample cause for doubt concerning their meaning. The arguments of counsel have emphasized the uncertainty. * * *"

He further stated: "Without difficulty respondent could have expressed in plain words the exception for which it now contends. It has failed, we think, so to do. And applying the settled rule, the insured is entitled to the benefit of the resulting doubt."

This language is apposite here. There is no dearth of words in the English language which interdicts clarification in these incontestability clauses. In fact many of the cases have suggested a clear and plain wording to accomplish this purpose. If, on the other hand, the Insurance Company prefers to employ words concerning which there is a "fair doubt as to the meaning" (Mutual Insurance Company v. Hurni Packing Company, supra, 263 U.S. page 174, 44 S.Ct. page 91, 68.L.Ed. 235, 31 A.L. R. 102) or which are susceptible of more than one meaning, it must submit to the legal sanctions imposed for their ambiguous use.

The assignments of error which are not expressly mentioned in this opinion are fully disposed of by the conclusions above announced.

The defendant's motion to dismiss in the District Court should have been allowed.

The decree of the District Court is reversed and the case remanded to that court for further proceedings not inconsistent with this opinion; the appellants recover costs of appeal.